**[Cite as *State v. Newlon*, 2024-Ohio-3433.]**

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2023-0085 |
| JASON NEWLON | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |


CHARACTER OF PROCEEDING:      Appeal from the Muskingum County Court
                             of Common Pleas, Case No. CR2023-0126

JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      September 6, 2024


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

RONALD WELCH                           APRIL CAMBELL
Prosecuting Attorney                   345 Metro Place, Suite 100
BY: JOSEPH A. PALMER                   Dublilne, OH 43017
Assistant Prosecutor
27 North Fifth Street
Zanesville, OH 43702

*Gwin, P.J.*

**{¶1}** Defendant-appellant Jason G. Newlon ["Newlon"] appeals his convictions and sentences after a jury trial in the Muskingum County Court of Common Pleas.

*Facts and Procedural History*

**{¶2}** On February 23, 2023, the Muskingum County Grand Jury returned an Indictment charging Newlon with thirty-one counts each relating to claims of sexual abuse by his three step-daughters.

*Counts 1 through 7 were for acts committed against C.D.*

**{¶3}** Count 1 and Count 2 alleged Gross Sexual Imposition, victim less than 13 years old, occurring from August 13, 2017 through August 12, 2019, felonies of the third degree in violation of R.C. 2907.05(A)(4) / (C)(2);

**{¶4}** Count 3 alleged Rape of a victim less than 13 years old, with a specification alleging force or threat of force, occurring from August 13, 2017 - August 12, 2019, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b) / (B);

**{¶5}** Count 4 and Count 6 alleged Gross Sexual Imposition with an allegation alleging force or threat of force, occurring from August 13, 2021 - August 12, 2022, felonies of the fourth degree in violation of R.C. 2907.05(A)(1) / (C)(1);

**{¶6}** Count 5 alleged Rape, with a specification alleging force or threat of force, occurring from August 13, 2021 – August 12, 2022, a felony of the first degree, in violation of R.C. 2907.02(A)(2) / (B); and

**{¶7}** Count 7 alleged Endangering Children causing serious physical harm, occurring from August 13, 2017 - August 12, 2022, a felony of the second degree in violation of R.C. 2919.22(B)(2) / (E)(3).

*Counts 8 to 24 were for acts alleged by C.D.'s sister, C.B.*

{¶8}    Count 8, Count 9 and Count 12 alleged Gross Sexual Imposition (August 8, 2013 - August 7, 2014), victim less than 13 years old, felonies of the third degree in violation of R.C. 2907.05(A)(4) / (C)(2);

{¶9}    Count 10, alleged Rape (August 8, 2013 - August 7, 2014) by force / threat of force, a felony of the first degree in violation of 2907.02(A)(2) / (B);

{¶10}  Count 11 alleged Gross Sexual Imposition (August 8, 2013 - August 7, 2015) by force / threat of force, a felony of the fourth degree in violation of R.C. 2907.05(A)(1) / (C)(1);

{¶11}  Counts 13, 14, 15 and 16 alleged Rape (August 8, 2013 - August 7, 2015) by force / threat of force, felonies of the first degree in violation of 2907.02(A)(2) / (B);

{¶12}  Count 17 alleged Rape (August 8, 2013 - August 7, 2014), victim less than 13 years old by force / threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(1)(b) / (B);

{¶13}  Count 18 alleged Rape (August 8, 2014 - August 7, 2015), by force / threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(2) / (B);

{¶14}  Count 19 alleged Rape (August 8, 2015 - August 7, 2016), by force / threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(2) / (B);

{¶15}  Count 20 alleged Rape (August 8, 2016 - August 7, 2017), by force / threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(2) / (B);

{¶16}  Count 21 alleged Rape (August 8, 2017 – August 7, 2018), by force / threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(2) / (B);

**{¶17}** Count 22 alleged Rape (August 8, 2018 – August 7, 2019), by force / threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(2) / (B);

**{¶18}** Count 23 alleged Rape (August 8, 2019 - August 7, 2020), by force / threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(2) / (B);

**{¶19}** Count 24 alleged Endangering Children (August 8, 2013 - August 7, 2019), causing serious physical harm, a felony of the second degree in violation of R.C. 2919.22(B)(2) / (E)(3).

*Counts 25 to 31 were for acts alleged by Z.B.*

**{¶20}** Count 25 and Count 26 alleged Gross Sexual Imposition (August 8, 2012 - August 7, 2013), victim less than 13 years old, felonies of the third degree in violation of R.C. 2907.05(A)(4) / (C)(2);

**{¶21}** Count 27 alleged Rape (August 8, 2016 - August 7, 2017), by force / threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(2) / (B);

**{¶22}** Count 28 alleged Rape (August 8, 2017 - August 7, 2018), by force / threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(2) / (B);

**{¶23}** Count 29 alleged Rape (August 8, 2018 - August 7, 2019), by force / threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(2) / (B);

**{¶24}** Count 30 alleged Rape (August 8, 2019 - August 7, 2020), by force / threat of force, a felony of the first degree in violation of R.C. 2907.02(A)(2) / (B);

**{¶25}** Count 31 alleged Endangering Children (August 8, 2012 - August 7, 2019), causing serious physical harm, a felony of the second degree in violation of R.C. 2919.22(B)(2) / (E)(3).

**{¶26}** A jury trial commenced on August 1, 2023.

*Z.B. testifies that Newlon sexually abused her*

{¶27}   Z.B. was born August 8, 2001. 1T. at 212[1]. C.B. is her twin sister and C.D. is her fifteen-year-old sister. Id. at 213. Newlon was married to the children's mother, Amy Newlon. Id.

{¶28}   Z.B. testified that Newlon began sexually abusing her by touching her breasts and vagina under her clothes. Id. at 216-217. The abuse began when the family lived at 1051 Adams Circle and continued when the family moved to 2457 Michael Drive. Id. at 215; 259. While living on Adams Circle, Z.B. was force to stroke Newlon's penis. Id. at 223. While living on Michael Drive, Newlon began putting his finger in Z.B.'s vagina. Id. at 219; 224. Newlon forced his penis into her vagina at least five times. Id. at 221; 223; 226. Newlon would threaten to beat her, her mother, and cause her mother to lose custody of her and her sibling if she were to tell on him. Id. at 221.

{¶29}   Z.B. remembered trying to resist Newlon; however, he would hold her tightly so that she could not move. 1T. at 222 -223; 229. She testified to the fear inside her during these encounters. Id. Newlon wrapped his legs around hers and "bear hugged" her so that she could not move at all. Id. at 222. Newlon would then force his penis inside her vagina. Id. at 223. He would grind against her until he got his penis inside of her. Id.

{¶30}   Z.B. testified that she had to repeat fourth grade because her confidence and concentration were affected by the molestation that was taking place. 1T. at 218; 240. Although it was difficult to remember precise dates and times, Z.B. believed the abuse began when she was nine years old. 1T. at 224. Z.B. testified that Newlon raped

---

[1] For clarity, the transcript of Newlon's jury trial will be referred to as "__T.__" signifying the volume number and the page number.

her more than five times. Id. at 224-226. She testified that Newlon raped her at least once a year until she moved out of the home in August 2020. Id. at 227-229. Newlon's threats continued throughout this time period. Id. at 230. Z.B. testified that she believed Newlon would hurt her because he had gotten physically violent with her. 1T. at 230. At one point, Newlon gave Z.B. a black eye when he punched her. Id. at 230-231.

**{¶31}** Z.B. testified that she told Newlon's sisters, Kimberly Newlon and Rachel Shackleford, that Newlon had sexually abused her, after Z.B. moved out of the house in 2020. Id. at 231-233; 235; 236. This conversation took place at Shackleford's place of employment. Id. Later that week, Z.B. told her godmother, Melissa Bottomly, and her grandmother, Sarah Barrett, about the abuse. Id. at 235-236. Z.B. went to the police at the urging of her family. Id. at 237-238.

**{¶32}** Z.B. testified that she now suffers from severe anxiety and depression, as well as anger as a result of being sexually abused by Newlon. 1T. at 239-240.

*C.B. testifies that Newlon sexually abused her*

**{¶33}** Z.B.'s twin sister, C.B. was born August 8, 2001. 1T. at 256. C.B. testified that she, her siblings and her mother moved in with Newlon when C.B. was in the third grade. Id. at 260. C.B. testified that the sexual abuse began at the home on 1051 Adams Circle. Id.

**{¶34}** C.B. remembered Newlon asking her to come into his bedroom and rub his stomach because his stomach was bloated and hurt. 1T. at 260 - 261. As C.B. rubbed Newlon's stomach, he began to push her hand down under his pants to rub his penis. Id. at 261. Newlon would then reach over and begin touching C.B. under her clothes. Newlon would pull C.B.'s clothing aside and would rub his penis on the outside of C.B.'s

vagina. Id. at 262. C.B. testified that Newlon's penis was not erect, but would become erect as she continued to rub it. Id. at 263. C.B. testified that Newlon would always begin the sexual abuse by complaining that his stomach hurt and asking her to rub it. Id. at 265. He would always touch her breasts and her vagina with his hands. Id. C.B. testified that the abuse occurred twice a week. Id. She testified that she was abused by Newlon more than thirty times from the age of twelve through the age of fifteen. Id. at 266 - 267. Newlon began putting his penis into C.B.'s vagina when she was twelve to thirteen years old. Id. at 268. C.B. testified that Newlon forced his penis into her anus and her mouth around this time. Id. at 270. Newlon would push her head down and force his penis into her mouth. Id.; 1T. at 272. Newlon would tell C.B. that it's okay, it's normal to explore. Id. at 271. C.B. testified that this happened over one hundred times from the age of twelve through the age of eighteen. Id. at 272-273. Newlon forced his penis into C.B.'s anus on two occasions when she was thirteen years old. Id. at 273-275. Newlon would threaten to punish C.B. if she did not cooperate. Id. at 279.

{¶35} C.B. was with Z.B. when they disclosed to their mother, Kimberly and Rachel. 1T. at 280- 281. She claimed the group "guilt tripped" the girls into not reporting the incidents to the authorities. Id. C.B. took her younger sister C.D. to the police station after discovering inappropriate pictures on her I-Pad. Id. at 284-285.

{¶36} C.B. testified that Newlon would take pictures of her when she was asleep in her bedroom. Id. at 287. He would later tell her that he deleted them only to have them reappear at a later time. Id. at 287-288.

{¶37} C.B. testified that as a result of the years of sexual abuse by Newlon she felt suicidal and thought of ending her life. 1T. at 285-286.

*The girls' mother, Amy Newlon, testifies*

{¶38}   Amy met Newlon fourteen years ago. 1T. at 297. They were married July 9, 2011. Id. at 298. She divorced Newlon at the beginning of 2023. Id. She and Newlon have two children together, twins, born September 3, 2014. Id. at 299.

{¶39}   Amy testified that she thought it was odd that Newlon would ask the children to rub his stomach; however, she did not want to believe anything inappropriate was going on. Id. at 301 - 303. She further testified that Newlon was controlling. Id. at 304. Amy was not allowed to have her family visit, or to take the children anywhere, even the grocery store. Id.

{¶40}   Amy testified that she learned of the abuse when Newlon's sister, Rachel Shackleford, told her, when Amy met her at Shackleford's place of employment, Shackleford's Disposal. 1T. at 305. No one else was present at the time. Id. Amy immediately kicked Newlon out of the house. Id. However, shortly later Newlon would threaten to kill himself, her, and his kids unless she allowed him to return. Id. at 307.

{¶41}   Amy testified that she did not report the abuse to the police because "it wasn't my story to tell. I couldn't force them to go and tell." 1T. at 307.

*The youngest sister, C. D., testifies*

{¶42}   C.D., born August 8, 2007, the youngest of the three sisters, testified. 1T. at 304. She told the jury that she was about eight years old when Newlon began to touch her inappropriately. Id. at 315. She said Newlon stuck his fingers inside her vagina, and then put his fingers in her mouth. Id. at 316. She then testified that when she turned fourteen, Newlon started raping her. Id. at 318 -320. She also explained that Newlon would threaten to kill himself if she told anyone. Id. at 323.

{¶43} She then explained that her sister C.B. took her to the sheriff's office. Id. at 324. She testified that she told C.B. about the abuse, because she had her phone taken from her. There were inappropriate pictures on it, as well as text messages between her and her friend about these allegations. Id. at 327.

{¶44} C.D. testified that she was interviewed at Nationwide Children's Hospital. 1T. at 324.

*The girls' godmother testifies.*

{¶45} Melissa Chapman Bottomly, the girls' godmother, also testified. She explained that Z.B. disclosed the abuse to her November 2, 2020. 2T. at 342- 344. Bottomly did not report the abuse; however, she encouraged Z.B. to report it. Id. at 344.

*The forensic interviewer testifies.*

{¶46} Carolyn Vineyard, who conducted the interview with C.D., at Nationwide Children's Hospital on September 21, 2022 also testified. Id. at 356. The video of her forty-five-minute interview was played for the jury. Id. at 362; State's Exhibit 2. Over objection a redacted version of Vineyard's report was also admitted into evidence. State's Exhibit 1. 356-357.

*The State moves to amend the indictment.*

{¶47} After the state rested, the state moved to amend the indictment on counts one through three to include the two-year period before what was stated in the indictment, because C.D. testified that the sexual abuse began when she was nine years old, not eleven years old. 2T. at 398. Newlon did not object. The trial judge granted the amendment to change the date of the offenses in Counts 1-3 to August 13, 2015 from August 13, 2017. Id.

*Newlon's sisters testify*

**{¶48}** Kimberly Newlon and Rachel Shackleford, Newlon's sisters, each testified for the defense. 2T. at 399; 409. Each testified that none of the girls ever disclosed to her that Newlon was sexually abusing them. Id. at 402; 415. Each further testified that no meeting ever took place at Shackleford's Disposal in which Newlon's sexual abuse of any of the girls was discussed. Id.

*The jury finds Newlon guilty on all counts*

**{¶49}** After the close of the evidence and instructions by the trial judge, the jury returned verdicts of guilty on all counts. 2T. at 547-554. The trial judge asked each side to submit a sentencing memorandum, and a presentence investigation report was ordered. Sentencing was deferred. Id. at 556-557.

*Sentence*

**{¶50}** Sentencing took place on September 25, 2023. The trial judge sentenced Newlon as follows,

> Count 1: 60 months; Count 2: 60 Months; Count 3: life w/o possibility of parole for 25 years; Count 4: 18 months; Count 5: 11 years; Count 6: 18 months; Count 7: 8 years; Count 8: 60 months; Count 9: 60 months; Count 10: life w/o possibility of parole for 25 years; Count 11: 18 months; Count 12: 60 months; Count 13: 11 years; Count 14: 11 years; Count 15: 11 years; Count 16: 11 years; Count 17: life w/o possibility of parole for 25 years; Count 18: 11 years; Count 19: 11 years; Count 20: 11 years; Count 21: 11 years; Count 22: 11 Years; Count 23: 11 years; Count 24: 8 years; Count 25: 60 months; Count 26: 60 months; Count 27: a minimum term of 11 years

an indefinite term of 16 1/2 years; Count 28: 11 years; Count 29: 11 years; Count 30: 11 years; and Count 31: 8 years.

**{¶51}** The trial judge further ordered:

Provided however, the periods of incarceration imposed on Counts One through Seven shall be served concurrently with one another for an aggregate prison term of life without the possibility of parole for twenty-five (25) years; Counts Eight through Twenty-four shall be served concurrently with one another for an aggregate prison term of life without the possibility of parole for twenty-five (25) years; Counts Twenty-five through Thirty-one shall be served concurrently with one another for an aggregate prison term of a minimum eleven (11) years to an indefinite maximum sixteen and one half (16 1/2) years; Counts One through Seven shall be served consecutively to Counts Eight through Twenty-four for an aggregate prison term of life without the possibility of parole for fifty (50) years; Counts Twenty-five through Thirty-one shall be served consecutively to Counts One through Twenty-four for an aggregate prison term of life without the possibility of parole for a minimum of sixty-one (61) years to an indefinite maximum sixty-six and one half (66 1/2) years.

*Assignments of Error*

**{¶52}** Newlon raises seven Assignments of Error,

**{¶53}** "I. THE TRIAL COURT ERRED IN AMENDING NEWLON'S INDICTMENT AS TO COUNTS ONE THROUGH THREE TO COVER A TWO-YEAR TIME FROM WHEN THE VICTIM WAS NINE AND TEN.

{¶54} "II. THE INTRODUCTION OF INADMISSIBLE EVIDENCE WAS REVERSIBLY PREJUDICIAL IN NEWLON'S TRIAL.

{¶55} "III. THE EVIDENCE AGAINST NEWLON WAS LEGALLY INSUFFICIENT OF THE RAPE COUNTS TO WHICH R.C. 2971.03 APPLIES, SHOULD BE REVERSED. THE EVIDENCE AGAINST NEWLON OF SERIOUS PHYSICAL HARM AS TO THE CHILD ENDANGERING COUNTS, SHOULD BE REVERSED.

{¶56} "IV. THE MANIFEST WEIGHT OF THE EVIDENCE WEIGHS IN FAVOR OF NOT CONVICTING NEWLON.

{¶57} V. NEWLON'S CONVICTIONS SHOULD BE REVERSED BECAUSE HIS COUNSEL WAS PREJUDICIALLY INEFFECTIVE.

{¶58} VI. NEWLON'S CONVICTIONS SHOULD BE REVERSED DUE TO PROSECUTORIAL MISCONDUCT IN REBUTTAL CLOSING REMARKS.

{¶59} VII. NEWLON WAS DENIED HIS RIGHT TO A FAIR TRIAL IN THIS CASE BECAUSE OF CUMULATIVE ERROR.

I.

{¶60} In his First Assignment of Error, Newlon claims the trial judge erred by granting the state's amendment of the indictment to change the time period for Counts 1, 2 and 3 to include the two-year period before what was stated in the indictment, because C.D. testified that the sexual abuse began when she was nine years old, not eleven years old. Newlon did not object. The trial judge granted the amendment to change the date of the offenses in Counts 1-3 to August 13, 2015 from August 13, 2017. Id. Specifically Newlon contends that he had no notice that he had to defend against

allegations occurring in 2015 and the amendment changed the punishment for the offenses.

**{¶61}** Because Newlon did not object he has forfeited all but plain error.

### Standard of Review

**{¶62}** Crim.R. 52 affords appellate courts limited power to correct errors that occurred during the trial court proceeding. The Rule distinguishes between errors to which a defendant objected at trial [Crim.R. 52(a)] and errors that a defendant failed to raise at trial. [Crim.R. 52(b)]. The main distinction between plain-error review, which is the standard employed when a defendant failed to object at trial, and harmless-error review, which is employed when a defendant did object, is the party that bears the burden. *See State v. Jones*, 2020-Ohio-3051, ¶ 17-18. Under plain-error review, the defendant bears the burden to demonstrate the requirements for review whereas under harmless-error review, the state bears the burden to demonstrate that the error did not affect the defendant's substantial rights. Id. at ¶ 17-18. *See, State v. Bond*, 2022-Ohio-4150, ¶7. While Crim.R. 52(a) precludes error correction only if the error "does ***not*** affect substantial rights," (emphasis added), Crim.R. 52(b) authorizes no remedy unless the error ***does*** "affec[t] substantial rights." (Emphasis added.). *State v. Perry,* 2004-Ohio-118, ¶15 (2004), *quoting United States v. Olano*, 507 U.S. 725, 734-735 (1993).

**{¶63}** "To establish plain error under Crim.R. 52(b), [Newlon] must show that an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis omitted.) *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, *quoting State v. Rogers*, 2015-Ohio-2459, ¶ 22. *Accord State v. Bailey*, 2022-Ohio-4407, ¶ 8. These elements are

"conjunctive," meaning "all three must apply to justify an appellate court's intervention." *Bailey* at ¶ 9, *citing State v. Barnes,* 94 Ohio St.3d 21, 27(2002). Intervention by an appellate court for plain error "is warranted only under exceptional circumstances to prevent injustice." Id. at ¶ 8, *citing State v. Long*, 53 Ohio St.2d 91(1978), paragraph three of the syllabus.

{¶64} In order to show that an error affected substantial rights, the defendant must demonstrate "a reasonable probability that the error resulted in prejudice - the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis deleted.) *State v. Rogers*, 2015-Ohio-2459, ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, (2004) (construing Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B)). *Bond* at ¶ 22. The Court in *Rogers* reaffirmed that even if an accused shows the trial court committed plain error affecting the outcome of the proceeding, the appellate court is not required to correct it. Id. at ¶ 23. The Supreme Court stated:

> [W]e have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes* at 27, 94 Ohio St.3d 21, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*Rogers*, ¶ 23; *State v. Perry*, 101 Ohio St.3d 118, 120 (2004).

*Time period of the sexual abuse*

{¶65} We find instructive the case law that has developed concerning the failure to provide exact dates upon which a sexual assault is alleged to have occurred. In those cases, courts have found specificity as to the time and date of an offense is not required

in an indictment. Under R.C. 2941.03: "an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of filing of the indictment * * *." An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The state is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment. *State v. Adams*, 2002-Ohio-5953, ¶ 8 (5th Dist.).

{¶66} If such is not fatal to an indictment, it follows that impreciseness and inexactitude of the evidence at trial is not "per se impermissible or necessarily fatal to a prosecution." *State v. Robinette*, 1987 WL 7153 (5th Dist. Feb 27, 1987); *State v. Davis*, 2024-Ohio-1504, ¶ 18 (5th Dist.), *appeal not allowed, 2024-Ohio-2576,* ¶18. The question in such cases is whether the inexactitude of temporal information truly prejudices the accused's ability fairly to defend himself. *State v. Sellards*, 17 Ohio St.3d 169(1985); *State v. Gingell* Ohio App.3d 364, 368 (1st Dist. 1982); *State v. Kinney*, 35 Ohio App.3d 84 (1st Dist. 1987). Newlon did not object, move for a continuance or move for a mistrial when the state asked that the indictment be amended. Newlon has not argued or alleged that the inexactitude prejudiced his ability to defend himself at trial.

{¶67} Grafted upon the question of prejudice is a problem that cases of child abuse invariably present, i.e., a victim-witness who, due to tender years, does not have the temporal memory of an adult and has problems remembering exact times. As this court has noted, "[t]ime is neither essential nor an element of the crime of sexual battery." *State v. Robinette, supra*. In *Robinette*, this Court noted,

We note that these particular cases often make it more difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses. This is especially true where the crimes involve several instances of abuse spread out over an extended period of time. *State v. Humfleet* (Sept. 9, 1985), Clermont App. No. CA84-04-031, unreported, at 15. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases considering the circumstances.

**{¶68}** In *State v. Sellards*, 17 Ohio St.3d 169 (1985), the Supreme Court gave two examples of when the failure to provide specific dates and times could be prejudicial to the accused. The Court first noted that if the age of the victim were an element of the crime with which the accused had been charged and the victim bordered on the age required to make the conduct criminal, then the failure to provide a more specific time frame would be prejudicial. This is true because "specific dates of sexual conduct might well have become critical to the accused's ability to prepare a defense, since sexual conduct toward one thirteen years of age or older would not constitute the offense of rape as defined in the charged section of the criminal code, R.C. 2907.02(A)(3)." *Sellards*, 17 Ohio St.3d at 172. The second situation is where "the defendant had been imprisoned or was indisputably elsewhere during part but not all of the intervals of time set out in the indictment. Again, under such circumstances, the inability of the state to

produce a greater degree of specificity would unquestionably prejudice the defense." Id. The *Sellards* court noted: "the record in this case does not indicate that the failure to provide the accused with a specific date was a material detriment to the preparation of his defense.

{¶69}  In the case at bar, C.B. testified to numerous times that she was sexually abused by Newlon. 1T. at 266; 272-273. Newlon's defense was that none of the events occurred. The indictment alleged the abuse continued through August 12, 2019. The original indictment in the case at bar alleged incidents of sexual abuse dating from 2013. *See,* Counts 8 - 18; Count 25. Accordingly, Newlon was on notice that he was required to defend against allegations occurring before 2017, albeit for C.B. and Z.B. Whether some acts of abuse of C.D. took place in 2015 as opposed to 2017 has not been shown to be prejudicial to his defense at trial.

*The amendment did not change the penalty for the offense for which Newlon was*

*convicted*

{¶70}  In *State v. Davis*, 2008-Ohio-4537, ¶ 12, the Ohio Supreme Court found plain error when a trial court amended an indictment to allow a defendant to be prosecuted for a higher degree of a crime.

{¶71}  Pursuant to R.C. 2907.02(B), a trial court is authorized to sentence a defendant for rape of a victim less than 13 years of age pursuant to R.C. 2907.02(A)(1)(b) to either life without parole or one of three indefinite sentences pursuant to R.C. 2971.03(B). The Ohio Supreme Court clarified this sentencing scheme, stating that "[w]hen a trial court does not sentence a defendant convicted under R.C. 2907.02(A)(1)(b) to life without parole under R.C. 2907.02(B), R.C. 2971.03(B) provides

three possible indefinite sentences that may be imposed instead: 10 years to life, 15 years to life, or 25 years to life." *State v. Bowers*, 2020-Ohio-5167, ¶ 5. The three possible indefinite sentences are set out in R.C. 2971.03(B)(1) which provides:

[I]f the court does not impose a sentence of life without parole [under R.C. 2907.02(B)], the court shall impose upon the person an indefinite prison term consisting of one of the following:

(a) Except as otherwise required in division (B)(1)(b) or (c) of this section, a minimum term of ten years and a maximum term of life imprisonment.

(b) *If the victim was less than ten years of age*, *a minimum term of fifteen years* and a maximum of life imprisonment.

(c) *If the offender purposely compels the victim to submit by force or threat of force,* or if the offender previously has been convicted of or pleaded guilty to violating  division (A)(1)(b) of section 2907.02 of the Revised Code or to violating an existing or former law of this state, another state, or the United States that is substantially similar to division (A)(1)(b) of that section, or if the offender during or immediately after the commission of the offense caused serious physical harm to the victim, *a minimum term of twenty-five years and a maximum of life imprisonment.*

Emphasis added.

{¶72} In the case at bar, Count 3 of the Indictment alleged that Newlon committed rape against a victim less than 13 years of age and *purposefully compelled the victim to submit by the use of force or threat of force*. The jury made the specific finding on the

verdict form that Newlon *purposefully compelled C.D. to submit by the use of force or threat of force.* Therefore, pursuant to R.C. 2971.03(B)(1)(c) the trial judge was authorized to impose the sentence of life imprisonment with parole eligibility after twenty-five years, without regard to whether the victim was less than ten years of age. Accordingly, in the case at bar, the amendment to the indictment did not increase the punishment for the crime for which Newlon was indicted and convicted.

{¶73} We hold that Newlon has not demonstrated that there is a reasonable probability that amending the Indictment resulted in prejudice, meaning that the error affected the outcome of the trial. We decline to find a manifest injustice warranting the extraordinary step of finding plain error by allowing the state to amend the Indictment.

{¶74} Newlon's First Assignment of Error is overruled.

II.

{¶75} In his Second Assignment of Error, Newlon contends that the admission of prejudicial other acts evidence and hearsay warrant a reversal of his convictions.

{¶76} Newlon concedes that he did not object to the other acts evidence; therefore, he has forfeited all but plain error. For our standard of review, see, Assignment of Error I, supra.

*Evid.R. 404 – Other Acts Evidence*

{¶77} Evidence of a person's character is generally not admissible to prove that the person acted in conformity therewith on a particular occasion. Evid.R. 404(A). Likewise, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B) does allow "evidence of the defendant's other crimes, wrongs, or acts to be admitted for

other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, 2020-Ohio-4440, ¶ 22; State *v. Knuff*, 2024-Ohio-902, ¶115.

{¶78} When evidence is challenged as inadmissible other-acts evidence, a trial court must perform a three-step analysis:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403.

*State v. Williams*, 2012-Ohio-5695, ¶ 19-20; *see also Hartman* at ¶ 24-33; Knuff at ¶ 116.

**Issue for Appellate Review**: *Whether but for the admission of his past violent acts against the victim, himself or others, the jury would have acquitted Newlon.*

{¶79} Newlon first cites to the testimony of Z.B. in which she told the jury Newlon blackened her eye. 1T. at 230-231. He additionally cites to the testimony of his ex-wife that he threatened to kill himself, her, and the children if she did not allow him to return to the marital residence. 1T. at 307.

**{¶80}** In the case at bar, the evidence concerning Newlon's violence toward Z.B. was relevant to explain why Z.B. believed that Newlon would hurt her, her mother or her siblings if she disclosed the abuse to anyone or did not submit to his perverse sexual demands. 1T. at 230. Further, the indictment alleged that Newlon purposefully compelled the victims to submit by force or threat of force. Thus, "force" was an element that the state had to prove beyond a reasonable doubt.

**{¶81}** The testimony from Amy Newlon was relevant to address the issue of why Newlon was permitted to return to the residence after the allegations of sexual abuse came to light. It further was relevant to explain Newlon's control over the family, their fear of Newlon, and their belief that he would carry through with his threats.

**{¶82}** Further, Newlon does not explain how the testimony that he now complains of prejudiced him at trial in light of the other voluminous admissible evidence against him. Newlon has thus failed to demonstrate a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial.

*Hearsay*

**{¶83}** Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

**{¶84}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991). "However, we review de novo evidentiary rulings that implicate the Confrontation Clause. *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010)." *State v. McKelton*, 2016-

Ohio-5735, ¶97. De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3rd Dist.), *citing Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

**{¶85}** We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967).

**{¶86}** Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen*, 31 Ohio St.3d 111, 119(1987). "The hearsay rule...is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements-the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine-are generally absent for things said out of court." *Williamson v. United States*, 512 U.S. 594, 598 (1994).

**Issue for Appellate Review**: *Whether the admission of hearsay during the testimony of C.B and in the recommendations contained in State's Exhibit 1 contributed to Newlon's conviction in any meaningful degree*

**{¶87}** Newlon first argues that the trial judge erred in permitting the state to introduce hearsay. He points only to the following testimony by C.B.,

When we had our meeting, it was me, Mom, [Z.B.], Kim, and Rachel.

I didn't really tell her details. Rachel had just basically told me the same

thing happened to you, something similar happened to [Z.B.]

1T. at 280-281. [Appellant's brief at 13]. This testimony does not relate any specific out of court statement. In addition, Amy Newlon [mom], Z.B., and Rachel Shackleford each testified and were subject to cross-examination. Newlon and Z.B. testified to the meeting and the topic of the meeting. Shackelford denied the meeting ever occurred.

{¶88} Newlon has thus failed to demonstrate a reasonable probability that any error in the admission of this testimony resulted in prejudice, meaning that the error affected the outcome of the trial.

*The recommendations contained in the report of the forensic examiner, State's*

*Exhibit 1*

{¶89} State's Exhibit 1 is a twelve-page report from the Child Assessment Center of Nationwide Children's Hospital concerning C.D. Newlon only objected to the recommendations of Alison Humphreys, LSW contained at page 9 and the recommendations of Caroline Vineyard, LSW contained at page 12 of the document. 2T. at 337-338. Newlon contends the introduction of these recommendations denied him his right to confrontation. [Appellant's brief at 13].

{¶90} The Confrontation Clause of the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Out-of-court statements by a witness which are testimonial in nature are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v.*

*Washington*, 541 U.S. 36 (2004). If testimony qualifies as nonhearsay, it does not implicate the Confrontation Clause. Id. at 59, *citing Tennessee v. Street,* 471 U.S. 409, 414 (1985); *State v. Maxwell*, 2014-Ohio-1019, ¶131.

{¶91} In *State v. Arnold*, 2010-Ohio-2742, the Ohio Supreme Court considered the admissibility of statements made during interviews at child-advocacy centers. *Arnold* involved a Confrontation Clause challenge. The issue in *Arnold* was whether a child's statements during an interview were for medical diagnosis or treatment, making them "non-testimonial," or whether they primarily served a forensic or investigative purpose, making them "testimonial" in violation of the defendant's confrontation rights. The Supreme Court noted that child-advocacy centers are unique insofar as a single interview with a child serves "dual purposes," which are: "(1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim."

{¶92} The recommendations to which Newlon objects simply indicate that C.D. should receive trauma counseling or therapy. The recommendations are nontestimonial because the primary purpose of the report was not to create a record for trial but for purposes of medical diagnosis and treatment. *See, White v. Illinois*, 502 U.S. 346, 356–357, (1992), and fn. 8.

{¶93} Even assuming *arguendo* that the trial judge should have redacted the recommendations before allowing the jury to review State's Exhibit 1, we find any error to "be harmless beyond a reasonable doubt, did not have an impact on the jury, and did not contribute to appellant's conviction in any meaningful degree." *State v. Rahman,* 23 Ohio St.3d 146,151(1986). The jury heard each of the victims testify in detail to the years

of sexual abuse inflicted upon her by Newlon. There is no evidence in the record that the jury abandoned their oaths, their integrity or the trial court's instructions and found Newlon guilty based upon the testimony that it was recommended C.D. receive trauma therapy.

**{¶94}** Newlon's Second Assignment of Error is overruled.[2]

III.

**{¶95}** In his Third Assignment of Error, Newlon first argues that the evidence concerning the element of "force or threat of force" to support the rape charges was insufficient. He next contends that the state failed to prove that Newlon's years of sexually abusing his step-daughters caused the children "serious physical harm."

**Standard of Appellate Review – Sufficiency of the Evidence**

**{¶96}** The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99 (2013); *Hurst v. Florida*, 577 U.S. 92 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 2016-Ohio-8295, ¶30; *State v. Jordan,* 2023-Ohio-3800, ¶13. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 2016-Ohio-8448, ¶13.

**{¶97}** When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259(1991),

---

[2] We will address Newlon's contentions concerning the prosecutor's remarks during closing argument in our disposition of Newlon's Sixth Assignment of Error.

paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, (1997)*; *Walker,* 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543(2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, ¶74.

*Rape – force or threat of force*

**Issue for Appellate Review**:  *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Newlon was guilty beyond a reasonable doubt of Rape*

**{¶98}**  Newlon was convicted of force / threat of force rape in violation of R.C. 2907.02(A)(2). R.C. 2097.02 provides,

> (A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

**{¶99}** "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse. R.C. 2907.01(A).

**{¶100}** "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

**{¶101}** R.C. 2907.02(A)(2) / (B) requires the victim's submission to sexual conduct to be obtained by force or threat of force. The force element needed to prove the offense of gross sexual imposition is the same as it is for rape. *State v. Riggs*, 2005-Ohio-5244, ¶120 (10th Dist.); *State v. Biggs*, 2022-Ohio-2481, ¶16 (5th Dist.) We further note, corroboration of a victim's testimony in rape cases is not required. *State v. Johnson*, 2006-Ohio-6404, ¶ 53.

**{¶102}** In *State v. Eskridge*, 38 Ohio St.3d 56, 58-59 (1988), the Supreme Court of Ohio found the amount of force required to meet this requirement varies depending on the age of the victim and the relationship between the victim and the defendant. Id. at ¶ 58. However, some amount of force must be proven beyond the force inherent in the crime itself. *State v. Dye*, 82 Ohio St.3d 323, 327 (1998).

**{¶103}** Here, the victims were not adults when each was sexually assaulted by Newlon. Each victim was a minor and still considered a child. The Ohio Supreme Court has stated that "it is nearly impossible to imagine the rape of a child without force involved," *State v. Dye*, 82 Ohio St.3d 323, 327(1998), and the Court has noted "the

coercion inherent in parental authority when a father sexually abuses his child*," State v. Eskridge*, 38 Ohio St.3d 56, 58 (1988). "'The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.'"  Id. at 59, *quoting State v. Etheridge*, 319 N.C. 34, 47, 352 S.E.2d 673 (1987); *Disciplinary Counsel v. Goodman*, 2024-Ohio-952, ¶24.

{¶104} In the case at bar, Newlon lived with the victims throughout the period that he abused them. He was married to the mother of the children and occupied the role of a father in the family.

{¶105} Z.B. testified that Newlon held her so that she could not move while raping her. 1T. at 222-223. He further threatened her, and she testified to her fear. Id. at 223. Newlon was violent with Z.B. causing her not to resist. Id. at 230.

{¶106} C.B. testified that Newlon threatened to punish her if she resisted. Id. at 279. Newlon would push her hand or her head down to his penis. Id. at 261-262; 265; 270-271. Newlon would force his penis into C.B.'s anus. Id. at 274.

{¶107} C.D. testified the Newlon put his fingers into her vagina and then into her mouth. 1T. at 316. In his bed, Newlon took her clothes off, turned her over and pit his penis in her vagina. Id. at 320. Newlon threatened to kill himself if she told anyone. Id. at 323.

{¶108} The girls did not consent to any of the actions of Newlon. They were not willing participants. It is clear from the record that each girl submitted because of the parental authority exercised over her by Newlon.

{¶109} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Newlon did commit the crime of rape by force or threat of force. We hold, therefore, that the state met its burden of production regarding each element of the crime of Rape for which Newlon was indicted and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Newlon's conviction.

*Gross Sexual Imposition – serious physical harm*

**Issue for Appellate Review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Newlon was guilty beyond a reasonable doubt of causing serious physical harm to his victims*

{¶110} Newlon was convicted of Endangering Children in violation of R.C. 2919.22; however, he concedes that the evidence was sufficient to convict him of the offense pursuant to R.C. 2919.22(A). Newlon's focus is solely upon the sentence enhancing element,

(E)(1) Whoever violates this section is guilty of endangering children.

(2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in the circumstances described in division (E)(2)(e) of this section, that division applies:

…

(c) If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, a felony of the third degree;

{¶111}R.C. 2901.01 statutorily defines "serious physical harm" in relevant part,

(5) "Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment.

{¶112}Newlon argues that the state failed to prove that any of his victims "suffered from any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment."

{¶113}This Court has previously noted the degree of harm which rises to level of "serious" physical harm is not an exact science, given the definition uses terms such as "substantial," "temporary," "acute" and "prolonged." *State v. Holsinger*, 2017-Ohio-1378, ¶35 (5th Dist.). The extent or degree of a victim's injuries is "normally a matter of the weight rather than the sufficiency of the evidence." Id.

{¶114}In the case at bar, Z.B. testified that she suffers from severe anxiety, depression and panic attacks. 1T. at 240. She repeated fourth grade as a result of her lack of focus and esteem brought on by the repeated abuse from Newlon. Id.

{¶115}C.B. testified that she was suicidal. 1T. at 285. She is in therapy and taking medication for depression. Id. at 286.

{¶116}Trauma therapy was recommended for C.D. State's Exhibit 1.

{¶117}In the case at bar, the children suffered repeated instances of sexual abuse for years at the hands of her step-father. Based upon the evidence presented during trial, it is not unreasonable to conclude that the abuse resulted in serious psychological trauma and that the trauma would require treatment well into the future.

{¶118}Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Newlon did cause serious physical harm to each child. We hold, therefore, that the state met its burden of production regarding each element of the crime of Endangering Children as a felony of the third degree for which Newlon was indicted and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Newlon's convictions.

{¶119}Newlon's Third Assignment of Error is overruled.

IV.

{¶120}In his Fourth Assignment of Error, Newlon contends his convictions are against the manifest weight of the evidence. Specifically, he argues that the children held multiple meetings about sexual abuse in which they testified that two parties participated, Kimberly Newlon and Rachel Shackleford. However, Newlon notes that neither party corroborated that these events, or that the sexual act disclosures, occurred. Therefore, he argues that competing inferences suggest that he did not commit the multiple acts of sexual abuse for which he was convicted. [Appellant's brief at 17].

**Standard of Review – Manifest Weight**

{¶121} The term "'manifest weight of the evidence'. . . relates to persuasion." *Eastley v. Volkman*, 2012-Ohio-2179, ¶19. It "concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387(1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 102 at n.4 (1997)*; *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶122} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d at 386–387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).

{¶123} Weight of the evidence addresses the evidence's effect of inducing belief. *Thompkins*, at 386-387; *State v. Williams,* 2003-Ohio-4396, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *State v. Jordan*, 2023-Ohio-3800; *Thompkins* at 387, *citing Tibbs v. Florida*, 457 U.S. 31, 42(1982) (quotation marks omitted); *State v. Wilson,* 2007-Ohio-2202, ¶25, citing *Thompkins.*

{¶124} In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley,* 2012-Ohio-2179 at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the

credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

{¶125} When there is conflicting testimony presented at trial, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented. "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Seasons Coal Co., Inc* at fn. 3, *quoting* 5 Ohio Jur.3d, Appellate Review, §603, at 191-192 (1978); *In re Z.C.,* 2023-Ohio-4703, ¶14.

{¶126} The interplay between the presumption of correctness and the ability of an appellate court to reverse a verdict based on the manifest weight of the evidence has been stated as follows, "'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Seasons Coal Co.,* 10 Ohio St.3d at 80, *quoting C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 280 - 281. See, also, *Frankenmuth Mut. Ins. Co. v. Selz*, 6 Ohio St.3d 169, 172 (1983); *In re Sekulich,* 65 Ohio St.2d 13, 16 (1981). "The central question is whether 'there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.' (Emphasis sic.) *State v. Getsy*, 84 Ohio St.3d 180, 193-194, 702 N.E.2d 866 (1998), *citing State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus, *superseded by constitutional amendment on other grounds as stated in Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668(1997)." State v. Nicholson,* 2024-Ohio-604, ¶71. A manifest-weight challenge should be sustained "'only

in the exceptional case in which the evidence weighs heavily against the conviction.'"

*Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, (1st Dist. 1983); *Nicholson* at ¶71.

{¶127} Further, to reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required pursuant to Article IV, Section 3(B)(3) of the Ohio Constitution. *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶ 2-4, *citing Thompkins* at paragraph four of the syllabus.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered*

{¶128} In *Cross v. Ledford,* 161 Ohio St. 469, 477(1954), the Supreme Court cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the*

*truth and what should be rejected as false*. See *Rice v. City of Cleveland*,

114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

{¶129} Because Z.B., C.B., C.D., Rachel Shackleford and Kimberly Newlon testified, the jury was able to judge for themselves the witness's appearance on the stand, manner of testifying, the reasonableness of their testimony, the accuracy of memory, frankness or lack of it, and any bias she may have. The fact that the jury chose not to believe the testimony of Newlon's sisters does not make his convictions against the manifest weight of the evidence. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 1999 WL 29752 (10th Dist. Mar 23, 2000) *citing State v. Nivens*, 1996 WL 284714 (10th Dist. May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 2003–Ohio–958, ¶ 21 (10th Dist.), *citing State v. Antill*, 176 Ohio St. 61, 67(1964); *State v. Burke*, 2003–Ohio–2889 (10th Dist.), *citing State v. Caldwell*, 79 Ohio App.3d 667 (4th Dist. 1992).

{¶130} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, (1997), *quoting State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.). Based upon the entire record in this matter, we find Newlon's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury

appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Newlon's guilt.

{¶131}Finally, upon careful consideration of the record in its entirety, we find as set forth above, there is substantial evidence on which the jury could properly conclude beyond a reasonable doubt that Newlon committed the acts for which he was indicted and convicted. *State v. Nicholson*, 2024-Ohio-604, ¶75. Therefore, in light of the evidence, as well as the record in its entirety, we find the jury clearly did not lose its way concluding that Newlon was guilty. We find that the jury did not disregard or overlooked compelling evidence that weighed against conviction.

{¶132}Newlon's Fourth Assignment of Error is overruled.

V.

{¶133}In his Fifth Assignment of Error, Newlon contends that trial counsel was ineffective for failing to object to other acts and hearsay testimony [Assignment of Error 2]; and for failing to object to remarks in the state's closing argument. [Assignment of Error, 7, *infra].*

**Standard of Appellate Review – Ineffective Assistance of Counsel**

{¶134} To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694(1984). To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. And to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Id., at 694, 104 S.Ct. 2052. *Andtus v. Texas*, 590 U.S. 806, 813-814 (2020).

**Issue for Appellate Review**: *Whether there is a reasonable probability that, but for counsel's failure to object the result of the proceeding would have been different.*

**{¶135}** In our disposition of Newlon's Second Assignment of Error, we found the evidence concerning Newlon's violence toward Z.B. was relevant to explain why Z.B. believed that Newlon would hurt her, her mother or her siblings if she disclosed the abuse to anyone or did not submit to his perverse sexual demands. 1T. at 230. We further found the testimony from Amy Newlon was relevant to address the issue of why Newlon was permitted to return to the residence after the allegations of sexual abuse came to light.

**{¶136}** As the evidence to which he now complains was admissible, trial counsel was not ineffective for failure to object to the testimony.

**{¶137}** Testimony concerning the alleged sexual assault by Newlon's brother upon their sisters, Rachel Shackleford and Amy Newlon, was relevant because it indicated that those assaults were not reported and kept quiet by the family. 2T. at 407- 408; 420. This was directly related to why the witnesses would deny meeting with, or ever speaking to, the victims about Newlon sexually abusing them.

**{¶138}** Accordingly, we find Newlon fails to demonstrate either the deficit performance or prejudice that *Strickland* requires to support his allegation of ineffective assistance of counsel.

**{¶139}** Newlon's Fifth Assignment of Error is overruled.

VI.

{¶140} In his Sixth Assignment of Error, Newlon contends the prosecutor committed error during closing argument by improperly inflaming the passions of the jurors.

{¶141} Newlon did not object to the comments he now assigns as error. Therefore, he has forfeited all but plain error.

**Standard of Appellate Review – Plain Error**

{¶142} Recently, the Ohio Supreme Court reviewed claims of plain error and stated,

> To prevail under the plain-error standard, the defendant must show that an error occurred, that it was obvious, and that it affected his substantial rights. Crim.R. 52(B); State *v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002) (an error affects substantial rights only when it affects the outcome of the trial). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*State v. Nicholson,* 2024-Ohio-604, ¶114. *See also, State v. Knuff,* 2024-Ohio-902, ¶117.

{¶143} In *Knuff*, the Supreme Court addressed the appropriate standard of review for addressing claims of prosecutorial misconduct during closing argument,

> We assess prosecutorial misconduct in closing arguments by asking "'whether the remarks were improper and, if so, whether they prejudicially affected [the] substantial rights of the defendant.'" *State v. Hessler*, 90 Ohio

St.3d 108, 125, 734 N.E.2d 1237 (2000), *quoting State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). A conviction may be upheld in the face of a prosecutor's improper remarks when it is "clear beyond a reasonable doubt that the jury would have returned a verdict of guilty" regardless of the comments. *United States v. Hasting*, 461 U.S. 499, 511-512, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (new trial unwarranted despite prosecutor's improper argument because of "overwhelming evidence of guilt and the inconsistency of the scanty evidence tendered by the defendants").

*State v. Knuff,* 2024-Ohio-902, ¶238.

**Issue for Appellate Review:** *Whether but for the prosecutor's remarks during closing argument the jury would have acquitted Newlon.*

{¶144} Newlon points to only the following remark made by the prosecutor during rebuttal closing argument,

You can say Amy's not a good mother. She didn't protect the kids. She let them down. You can say Rachel and Kim aren't good aunts and they didn't protect the kids. They let them down. The question is if you believe them, are you going to let them down or are you going to protect them? Thank you.

2T. at 500. [Appellant's brief at 18-19].

{¶145} The prosecutor may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case. Thus, he cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case. *United*

*States v. Solivan*, 937 F.2d 1146 (6ᵗʰ Cir. 1991). *State v. Draughn*, 76 Ohio App.3d 666, 670-671 (5th Dist. 1992).

{¶146} The fact that the prosecutor engaged in some improper argument, however, does not warrant reversal unless the remarks prejudicially affected substantial rights of the accused. *State v. Hessler*, 90 Ohio St.3d 108, 125 (2000). In making this determination, we must consider the effect of any misconduct in the context of the entire trial. *State v. Keenan*, 66 Ohio St.3d 402, 410 (1993). We must also view the prosecutor's closing argument in its entirety when determining prejudice. *State v. Hill*, 75 Ohio St.3d 195, 204 (1996).

{¶147} In the case at bar, even though the prosecutor's remark was improper, the single comment did not pervade the entire trial, let alone the closing argument. Under these circumstances, there is nothing in the record to show that the jury would have found Newlon not guilty had the comments not been made on the part of the prosecution. *State v. Benge*, 75 Ohio St.3d 136, 141(1996); *State v. McMillen*, 2009-Ohio-210, ¶¶ 111-112 (5ᵗʰ Dist.).

{¶148} In light of the entire record, the prosecutor's remarks did not prejudicially affect Newlon's substantial rights so as to deny him a fair trial.

{¶149} Newlon's Sixth Assignment of Error is overruled.

VII.

{¶150} In his Seventh Assignment of Error, Newlon argues the cumulative effect of the erroneous admission of evidence and, the prosecutor's misconduct, resulted in the denial of his right to a fair trial.

{¶151} In State *v. Brown*, 2003-Ohio-5059, the Ohio Supreme Court recognized the doctrine of cumulative error. The cumulative error doctrine does not apply, however, where the defendant "cannot point to 'multiple instances of harmless error.'" *State v. Mammone*, 2014-Ohio-1942, ¶ 148 *quoting State v. Garner*, 74 Ohio St.3d 49, 64, (1995).

{¶152} In the instant case, we have found no instance of error. The doctrine of cumulative error is therefore inapplicable.

{¶153} Newlon's Seventh Assignment of Error is overruled.

{¶154} The judgment of the Muskingum County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, J., and

King J., concur