[Cite as *State v. Higginbotham*, 2026-Ohio-84.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 CA 00034 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Licking County Court of Common Pleas, Case No. 2024-CR-00525 |
| TRACY D. HIGGINBOTHAM | |
| Defendant – Appellant | Judgment:   Affirmed |
| | Date of Judgment Entry:January 9, 2026 |

**BEFORE:**   ANDREW J. KING, P.J., ROBERT G. MONTGOMERY, J., & KEVIN W. POPHAM, J.; Appellate Judges

**APPEARANCES:**   Kenneth W. Oswalt and Tyler J. McCoy for Plaintiff-Appellee; Samuel H. Shamansky, Donald L. Regensburger & Ashton C. Gaitanos, for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}   Defendant-Appellant Tracy D. Higginbotham ("Higginbotham") appeals his conviction and sentence following a jury trial in the Licking County Court of Common Pleas.  For the reasons below, we affirm.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   On August 8, 2024, a Licking County Grand Jury indicted Higginbotham on one count of Felonious Assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree. The case proceeded to a jury trial beginning February 4, 2025. The following evidence was presented at trial.

**The Events Leading to the Altercation**

{¶3}    The following facts are largely uncontested. Higginbotham, his wife Laura, and their daughter spent the evening socializing with several individuals, including their friend, Pam Goss[1]. As the evening concluded, Higginbotham, Laura, their daughter, and Goss entered Higginbotham's 2019 Chevrolet Silverado pickup truck to return home. After dropping their daughter off at a friend's residence, Goss received a call from her own daughter, C.G., requesting a ride home from a party on Connemara Drive. The gathering included approximately twenty-five high school students, among them C.G.'s friend N.B. and two male acquaintances, T.H. and O.N.

{¶4}    Because Higginbotham was unfamiliar with the neighborhood, Goss moved to the front passenger seat to provide directions. When they arrived at the residence, C.G., N.B., T.H., and O.N. entered the truck. Laura introduced herself and her husband and asked whether the teenagers knew their daughter, who attended the same high school. T.H. replied that they knew her and remarked that she "cheated on [his] friend Brock." *2T. at 172*[2].  Higginbotham stopped the vehicle ten to twenty feet from the driveway of the residence.

{¶5}    At this point, the witnesses' accounts diverged.

**Testimony of C.G. (Goss' Daughter)**

{¶6}    C.G. testified that Higginbotham ordered T.H. to get out of the truck while Laura, seated in the back, urged Higginbotham to keep driving. *1T. at 111.* C.G. testified that Higginbotham – after telling T.H. multiple times to get out - exited the vehicle, walked

---

[1] Pam Goss did not testify at trial.
[2] For clarity, the transcript of Higginbotham's jury trial will be referred to as "__*T.*__" signifying the volume and page number.

to the rear passenger door, and pulled T.H. out by his hair. Laura and O.N. also exited the truck. *Id.*

{¶7} C.G. testified that she saw Higginbotham push T.H., and then Higgenbotham stumbled and fell to the ground. Moments later, C.G. heard "a loud-ish noise." When she looked back, T.H. was lying on the ground. *Id. at 114-115*. During the drive home, Laura asked her husband, "Tracy, what's wrong with you? Why would you do that, or something along those lines." *Id. at 117.*

**Testimony of N.B. (C.G.'s Friend)**

{¶8} N.B. testified that T.H. and O.N. had asked C.G. for a ride home, and C.G. agreed. *1T. at 72-73*. N.B. testified that after T.H. commented about Higginbotham's daughter, Higginbotham stopped the truck and angrily ordered T.H. to get out. Laura, however, placed her hand on T.H. and said it was fine and to "just keep moving." *Id. at 76.*

{¶9} N.B. testified that Higginbotham then exited the vehicle, opened the rear passenger door, and pulled T.H. out by his hair. O.N. immediately exited to defend his friend. Once outside, Higginbotham punched T.H. in the stomach and chest. *Id. at 78*. T.H. returned punches, and O.N. attempted to separate the two. N.B. testified it was possible O.N. also struck Higginbotham. *Id. at 79.*

{¶10} N.B. testified that at some point, she saw Higginbotham on the ground and T.H. and O.N. standing nearby. She further testified that after Higginbotham got up from the ground, T.H. told Higgenbotham that if he gave them a ride home, T.H. would not involve the police. Higginbotham then punched T.H. in the face, causing T.H. to lose

consciousness and fall backward. *Id. at 80*. N.B. observed blood around T.H.'s mouth. *Id. at 81.* During the drive home, Laura repeatedly said, "We're so [expletive]." *Id.*

**Testimony of O.N. (Male Acquaintance)**

{¶11} O.N. testified that when T.H. mentioned Higginbotham's daughter, Higginbotham stopped the truck and, in an angry tone, ordered T.H. out. *1T. at 35.* Approaching the rear passenger door, Higginbotham said, "Do I need to pull you out of this car?" *Id. at 36.* When T.H. replied "Don't touch me", Higginbotham grabbed T.H. by the hair and pulled him over N.B. and out of the truck, striking him as he did so. *Id. at 37-38*.

{¶12} O.N. got out of the truck to intervene, grabbing Higginbotham's arms to stop him. He described T.H. as attempting to push Higginbotham off. Either T.H. pushed Higginbotham, or Higginbotham tripped and fell. *Id*. *at 39.* O.N. testified that while Higginbotham was on the ground, T.H. kicked Higginbotham "in self-defense." *Id*. When T.H. told Higginbotham he would forget the incident if given a ride home, Higginbotham responded by punching T.H. in the mouth, knocking him to the ground. *Id*. *at 40-41*. O.N. testified that T.H. "had a hole in his face" and was "bleeding everywhere." *Id. at 43*.

**Testimony of T.H. (Male Acquaintance)**

{¶13} T.H. confirmed that when Laura asked about their daughter, he replied that she had dated his friend and cheated on him. *2T. at 172*. He testified that Higginbotham stopped the vehicle, yelled for T.H. to get out, and ignored Laura's pleas to calm down. *Id. at 173.*

{¶14} T.H. testified that when Higginbotham threatened to pull him out by his hair, he responded, "Don't touch me." *Id.* Higginbotham then grabbed him by the hair and dragged him from the truck while Laura yelled for Higginbotham to stop. *Id.*

{¶15} T.H. testified that O.N. tried to intervene as the struggle moved toward a nearby tree line. Higginbotham punched T.H. several times, then Higginbotham fell or was pushed to the ground. *2T. at 177-180.* T.H. admitted that he forcefully pushed Higginbotham back down with his foot to keep him from getting up. *Id. at 183, 216-217, 227.*

{¶16} When Higginbotham got to his feet, T.H. apologized and said he would not call the police if Higginbotham gave them a ride home. Higginbotham refused. When T.H. said, "Okay, I'm calling the police, you're crazy," Higginbotham replied, "Oh, yeah?" and punched him in the face, knocking him unconscious. *2T. at 181.*

{¶17} T.H. was treated at the hospital a short time after the incident, where he received six stitches to his mouth. *Id. at 188-190.*

**Testimony of Laura Higginbotham**

{¶18} Laura's testimony diverged significantly from the accounts of the teens. She stated that T.H. made his remark about their daughter in a "snotty" tone. *2T. at 351.* She testified that she - not her husband - first told T.H. to get out of the truck, and that both she and Higginbotham repeated that request multiple times. *Id. at 353-356.* Laura testified that when T.H. refused, Higginbotham warned T.H. that he would remove him from the vehicle and then pulled T.H. out by the hair. *Id. at 356-357.*

{¶19} Laura testified that, once Higginbotham, T.H., and O.N. were outside the truck, she saw her husband on the ground being repeatedly kicked by T.H. and O.N. *Id.*

*at 358-359*. She exited the vehicle, yelling at them to stop, and heard T.H. direct a racial slur at her husband before Higginbotham struck T.H. once in the mouth. *Id. at 360-361*.

**Testimony of the Defendant**

{¶20} Higginbotham testified that, after T.H.'s remark about his daughter, both he and his wife repeatedly told T.H. to get out of the truck. *3T. at 425-426*. When T.H. refused, Higginbotham exited, opened the rear door, and again told him to get out. *Id.* at 426. He warned that if T.H. refused, he would remove him himself. *Id. at 427.*

{¶21} According to Higginbotham, as he pulled T.H. by the arm from the vehicle, O.N. struck Higginbotham in the mouth, causing him to slip and fall. *Id. at 428-429*. While on the ground, both T.H. and O.N. kicked him repeatedly. *Id.* at 429. He testified that he threw a single punch "to stop getting beaten." *Id. at 430*.

{¶22} Higginbotham further stated that T.H. called him a racial slur and threatened to call the police, then offered to "forget this ever happened" if given a ride home. *Id.*

{¶23} Higginbotham and his wife both provided statements to police that evening, which were captured on body camera footage admitted at trial. *State's Exhibit 6*. Photographs of Higginbotham's injuries were introduced by both parties. *State's Exhibits 7A-7M, C1-C12; Defendant's Exhibits D1-D7.*

**Additional Testimony**

{¶24} T.H.'s mother, Amanda Morrison, testified that she took her son to Licking Memorial Hospital after observing his injuries. *2T. at 241-248; State's Exhibits 3A-3L.* Nurse Practitioner Robert Graves testified that T.H. sustained a through-and-through laceration to his lower lip requiring six stitches, resulting in scarring and ongoing discomfort. *2T. at 150-153; State's Exhibits 5A-5B.*

**Verdict and Sentence**

{¶25} Following deliberations, the jury found Higginbotham guilty of felonious assault. At sentencing, the trial court considered the presentence investigation and the arguments of counsel before imposing a three-year term of community control. As part of that sanction, Higginbotham was ordered to serve thirty days in the Licking County Justice Center, with one day of jail-time credit, and to comply with additional nonresidential and financial conditions, including a curfew, electronic monitoring, abstinence from alcohol, and payment of a $10,000 fine.

**Assignments of Error**

{¶26} Higginbotham raises two assignments of error for our consideration,

{¶27} "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION."

{¶28} "II. THE TRIAL COURT ERRED BY ADMITTING HEARSAY STATEMENTS AND IMPERMISSIBLE OPINION TESTIMONY WHICH SERVED ONLY TO IMPROPERLY BOLSTER THE CREDIBILITY OF THE STATE'S WITNESSES, THEREBY VIOLATING APPELLANT'S RIGHTS TO CONFRONTATION, DUE PROCESS, AND A FAIR TRIAL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS."

I.

{¶29}   In his first assignment of error, Higginbotham argues that the State failed to disprove that he acted in self-defense.

**Standard of Review — Manifest Weight of the Evidence**

{¶30}   The State's burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal. *State v. Messenger*, 2022-Ohio-4562, ¶ 27; *State v. Smiley*, 2025-Ohio-2666, ¶ 19 (5th Dist.).

{¶31}   A manifest-weight challenge concerns the persuasive force of the evidence. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. It asks whether "the greater amount of credible evidence" supports one side of the case over the other. (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as recognized in State v. Smith, 80 Ohio St.3d 89, 102 n.4 (1997); State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶32}   When reviewing a claim that a conviction is against the manifest weight of the evidence, an appellate court functions as a "thirteenth juror." *State v. Jordan*, 2023-Ohio-3800, ¶ 17. The court reviews the entire record, weighs the evidence and reasonable inferences, considers witness credibility, and determines whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *Id.*; see also *Thompkins*, 78 Ohio St.3d at 387; *State v. Sheppard*, 2025-Ohio-2747, ¶ 24 (5th Dist.).

{¶33}   This review, however, is undertaken with a significant presumption in favor of the jury's findings. The factfinder directly observes witnesses' demeanor, gestures, and tone—factors appellate courts cannot replicate. *Eastley*, ¶ 21; *Seasons Coal Co. v.*

*Cleveland*, 10 Ohio St.3d 77, 80 (1984). For that reason, a manifest-weight reversal is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, at 387.

{¶34} Finally, the Ohio Constitution requires that all three judges on the appellate panel concur before a conviction may be reversed as against the manifest weight. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2–4.

### Higginbotham's Argument

{¶35} Higginbotham contends that the State failed to meet its burden of disproving self-defense. He asserts that the greater weight of credible evidence demonstrated that he did not create the situation that resulted in his use of force, and that he reasonably believed he faced imminent bodily harm from T.H. He maintains that he used only a single punch, which he claims was a reasonable measure to end the assault against him.

### Self-Defense Principles

{¶36} A defendant who asserts self-defense admits the underlying conduct but claims justification. *State v. Poole*, 33 Ohio St.2d 18 (1973); *State v. Watson*, 2023-Ohio-3137, ¶ 80 (5th Dist.). The burden of disproving self-defense beyond a reasonable doubt rests with the State once the defendant meets his initial burden of production. R.C. 2901.05(B)(1); *State v. Messenger*, 2022-Ohio-4562, ¶¶ 22, 24-25.

{¶37} A defendant charged with using non-deadly force acts in self-defense if the evidence tends to show that he (1) was not at fault in creating the situation, (2) held a reasonable or honest belief of imminent bodily harm, and (3) used no more force than was reasonably necessary. *State v. Asp*, 2023-Ohio-290, ¶ 55 (5th Dist.), citing *State v. Paskins*, 2022-Ohio-4024, ¶ 48 (5th Dist.). The State need to disprove only one of these

elements to defeat the claim. *State v. Jackson*, 22 Ohio St.3d 281, 284 (1986); *State v. Staats*, 2021-Ohio-1325, ¶ 28 (5th Dist.).

**{¶38}** Here, because the trial court instructed the jury on self-defense, the record contained evidence supporting the defense sufficient to meet Higginbotham's burden of production. *Messenger*, ¶ 26. The jury's guilty verdict demonstrates that the State successfully persuaded the jury that Higginbotham did not act in self-defense. *Id.*

**Evaluation of the Conflicting Testimony**

**{¶39}** The central issue for the jury was whether Higginbotham acted as an aggressor when he struck T.H. or whether he used force solely to protect himself. The evidence presented two sharply divergent narratives.

**{¶40}** Under the State's version, once Higginbotham stood up from the ground, T.H. apologized, attempted to de-escalate, and offered not to contact the police in exchange for a ride home. According to multiple witnesses, it was only after this apparent withdrawal from the conflict that Higginbotham approached T.H. and delivered the punch that caused a through-and-through laceration requiring stitches.

**{¶41}** Under the defense's version, Higginbotham struck T.H. either immediately upon regaining his footing to stop an ongoing beating or after T.H. directed a racial slur at him.

**{¶42}** The jury was entitled to resolve these discrepancies. As numerous courts have emphasized, self-defense often hinges on credibility. *State v. Jamii*, 2023-Ohio-4671, ¶ 78 (10th Dist.); *State v. Sexton*, 2025-Ohio-718, ¶ 41 (1st Dist.); *State v. Morgan*, 2024-Ohio-5843, ¶ 40 (7th Dist.). Conflicts in testimony do not, by themselves, render a verdict against the manifest weight. *State v. Craig,* 2000 Ohio App. LEXIS 1138, (10th

Dist. Mar. 23, 2000); *State v. Nivens*, 1996 WL 284714 (10th Dist.). A jury is free to believe all, part, or none of any witness's testimony. *State v. Petty*, 2017-Ohio-1062, ¶ 63 (10th Dist.); *State v. Davis*, 2024-Ohio-1504, ¶ 60 (5th Dist.).

{¶43} Where two reasonable views of the evidence exist, an appellate court does not substitute its judgment for that of the jury. *State v. Dyke*, 2002-Ohio-1152, ¶ 13 (7th Dist.); *State v. Snider*, 2012-Ohio-2183, ¶ 24 (5th Dist.). Moreover, the State's reliance on circumstantial evidence does not diminish its probative value. *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991).

**Conclusion**

{¶44} After independently reviewing the entire record, weighing the evidence and reasonable inferences, and considering witness credibility as required of a "thirteenth juror," we find no indication that the jury lost its way or created a manifest miscarriage of justice. The jury was entitled to credit the State's witnesses and reject the defense's account. The greater weight of credible evidence supports the conclusion that Higginbotham acted as the aggressor when he struck T.H.

{¶45} Accordingly, we hold that the jury's verdict finding Higginbotham guilty of felonious assault is not against the manifest weight of the evidence.

II.

{¶46} In his second assignment of error, Higginbotham challenges the admission of several portions of Deputy Don Keene's testimony, asserting that some statements constituted inadmissible hearsay and that others amounted to improper bolstering of the credibility of the teenage witnesses. Higginbotham acknowledges that he failed to

contemporaneously object to certain portions of that testimony, requiring review under the plain-error standard.

**Preserved Objections – Hearsay**

{¶47}   Higginbotham objected to portions of Deputy Keene's testimony recounting statements made by T.H. and O.N. The challenged statements include:

> What I learned from [T.H.] that night is that he was looking for a ride home…When they all loaded in the truck…he [remarked] that… 'While she was dating my friend, she cheated on him.' And that upset Mr. Higginbotham…He stopped the truck and told him to get out.

2T. at 311-312.

{¶48}   He also objected to Keene's recounting of O.N.'s narrative:

> [O.N.] was explaining…that Mr. Higginbotham became angry…and ordered him out of his truck…[and] had punched [T.H.] while he was pulling him out of the truck.

2T. at 315-316.

{¶49}   Higginbotham further argues that the trial court erroneously permitted Deputy Keene to offer opinions on credibility, including his statements that he did not believe the juveniles "would deliberately mislead" him (3T. at 330) and that he would not have filed charges against the teens based on his interviews with Mr. and Ms. Higginbotham. (3T. at 330).

**Admissibility of Evidence**

{¶50}   A trial court has broad discretion in ruling on the admissibility of evidence, and its decision will not be disturbed absent an abuse of that discretion. *Rigby v. Lake*

*Cty.,* 58 Ohio St.3d 269, 271 (1991). Even where such an abuse occurs, reversal is warranted only if the error affects a substantial right or results in a miscarriage of justice. *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-165 (1980); *Beard v. Meridia Huron Hosp.*, 2005-Ohio-4787, ¶ 20.

{¶51} However, evidentiary rulings implicating constitutional guarantees - such as the right to confrontation - are reviewed de novo. *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010); *State v. McKelton*, 2016-Ohio-5735, ¶ 97; *State v. Anthony*, 2021-Ohio-1916, ¶ 25 (5th Dist.).

**Harmless Error**

{¶52} Even assuming the challenged testimony constituted hearsay, reversal is not required. Evid.R. 103(A) precludes reversal unless the erroneous admission of evidence affects a substantial right. The Supreme Court of Ohio has long recognized that error in admitting testimony is harmless where the statements are cumulative of properly admitted evidence. *See State v. Conway*, 2006-Ohio-2815, ¶ 59; *State v. Holloman*, 2007-Ohio-840, ¶ 33 (10th Dist.); *State v. Brooks*, 2012-Ohio-1725, ¶ 54 (5th Dist.).

{¶53} Here, the testimony of T.H., O.N., and the remaining teen witnesses independently and consistently described the same sequence of events as those recounted by Deputy Keene. Higginbotham has not demonstrated that the admission of the deputy's testimony materially affected the verdict. *See State v. Harris*, 2015-Ohio-166, ¶ 37. Even after excising the challenged statements, the remaining evidence overwhelmingly established the elements of felonious assault. *State v. Aeschilmann*, 2014-Ohio-4462, ¶¶ 95-96 (5th Dist.). Accordingly, any error in admitting these statements was harmless beyond a reasonable doubt.

**Unpreserved Claims – Alleged Bolstering**

{¶54} Higginbotham next asserts that the trial court erred in permitting Deputy Keene to testify, without objection, that (1) T.H.'s trial testimony was "similar" to his prior statement (3T. at 312); (2) O.N.'s testimony was "consistent" with his prior statement (3T. at 316); (3) N.B.'s statements were consistent with those of the other teens (3T. at 318); and (4) the statements of Higginbotham and Laura given on the night of the incident were "more detailed" at trial (3T. at 467). Higginbotham further challenges Deputy Keene's assertion that he did not believe the juveniles "would deliberately mislead [him]" (3T. at 330) and his comment that he would not have filed charges against the teenagers based on his interviews with Mr. and Ms. Higginbotham. (3T. at 330.)

{¶55} Because no contemporaneous objections were made, we review these claims for plain error.

**Plain Error**

{¶56} Crim.R. 52 distinguishes preserved error from unpreserved error. Under plain-error review, the defendant must show (1) an error occurred, (2) the error was obvious, and (3) there is a reasonable probability the outcome would have been different absent the error. *State v. Rogers*, 2015-Ohio-2459, ¶ 22; *State v. McAlpin*, 2022-Ohio-1567, ¶ 66. All three prongs must be met. *State v. Bailey*, 2022-Ohio-4407, ¶ 9. Even then, an appellate court retains discretion and will correct plain error only to prevent a manifest miscarriage of justice. *Rogers* at ¶ 23; *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶57} Opinion testimony regarding another witness's credibility constitutes improper bolstering. *See State v. Knuff*, 2024-Ohio-902, ¶ 117; *State v. Denson*, 2023-

Ohio-847, ¶ 25 (1st Dist.); *State v. Boston*, 46 Ohio St.3d 108, 129 (1989). However, courts distinguish between direct commentary on veracity—which is prohibited—and more general descriptions of consistency among accounts, which may be permissible. *See State v. Hughe*s, 2015-Ohio-151, ¶ 48 (10th Dist.); *State v. Cashin*, 2009-Ohio-6419, ¶ 20 (10th Dist.); *State v. Stowers*, 81 Ohio St.3d 260, 262-263 (1998).

**Application**

{¶58}  Deputy Keene's testimony did, at points, cross into prohibited commentary by suggesting his belief in the teens' credibility and by implying that their statements were consistent and reliable. Such statements inch toward the type of opinion testimony concerning veracity that the above authorities warn against.

{¶59}  However, Higginbotham cannot satisfy the demanding plain-error standard. The jury heard testimony directly from T.H., O.N., N.B., Higginbotham and Laura. The jurors had ample opportunity to observe the demeanor of each witness, assess inconsistencies, and weigh their credibility without reliance on any opinions expressed by the deputy. *See State v. Newlon,* 2024-Ohio-3433 (5th Dist.); *State v. Wycinski*, 2024-Ohio-5203, ¶¶ 21-23 (5th Dist.).

{¶60}  Further, the evidence of guilt was substantial. The teens' accounts were consistent with one another, corroborated by physical evidence, and internally coherent. Even if Deputy Keene's comments were improper, they did not meaningfully contribute to the verdict.

**Conclusion**

{¶61}  On this record, Higginbotham cannot demonstrate a reasonable probability that any of the challenged statements—whether viewed individually or collectively—

affected the outcome of the trial. We therefore find no basis for reversal. Even assuming portions of Deputy Keene's testimony were improper, any resulting error was harmless or did not rise to the level of plain error. The jury's verdict would have been the same had the contested testimony not been admitted.

{¶62} Accordingly, the second assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Licking County Court of Common Pleas is affirmed.  Costs to Appellant, Tracy D. Higginbotham.

By: Popham, J.

King, P.J. and

Montgomery, J., concur