[Cite as *State v. Reed*, 2026-Ohio-687.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 CA 0018 |
| Plaintiff – Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Richland County Court of Common Pleas, Case No. 2023 CR 0883 R |
| ANTHONY REED | Judgment:  Affirmed |
| Defendant – Appellant | Date of Judgment Entry:February 27, 2026 |

**BEFORE:** ANDREW J. KING, P.J., WILLIAM B. HOFFMAN, J., KEVIN W. POPHAM, J.; Appellate Judges

**APPEARANCES:** JODIE SCHUMAKER, MEGAN HOBART, for Plaintiff-Appellee; RUSSELL S. BENSING for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}    Defendant-Appellant Anthony Reed ("Reed") appeals his convictions and sentences after a jury trial in the Richland County Court of Common Pleas.  For the reasons below, we affirm.

**Facts and Procedural History**

{¶2}    On December 11, 2023, a Richland County Grand Jury returned a five-count indictment against Reed, charging him with: (1) possession of cocaine, in an amount greater than twenty-seven grams but less than one hundred grams, a felony of the first degree in violation of R.C. 2925.11(A)/(C)(4)(e); (2) trafficking in cocaine, in an

amount greater than twenty-seven grams but less than one hundred grams, a felony of the first degree in violation of R.C. 2925.03(A)(2)/(C)(4)(f); (3) possession of a fentanyl-related compound, in an amount greater than twenty grams but less than fifty grams, a felony of the first degree in violation of R.C. 2925.11(A)/(C)(11)(e); (4) trafficking in a fentanyl-related compound, in an amount greater than twenty grams but less than fifty grams, a felony of the first degree in violation of R.C. 2925.03(A)(2)/(C)(9)(f); and (5) participating in a criminal gang, a felony of the second degree in violation of R.C. 2923.42(A)/(B).

{¶3}    The evidence adduced at trial established the following sequence of events.

**Traffic Stop and Arrest**

{¶4}    On April 18, 2023, Officer Justin Cikity of the Mansfield Police Department observed a black Ford truck driven by co-defendant Jabril Bond operating erratically at a high rate of speed in a high-crime area[1]. *2T. at 277-278*[2]. Because the truck's windows were heavily tinted, Officer Cikity could not see the occupants. *2T. at 285*. After Bond failed to stop at a stop sign, Officer Cikity attempted to initiate a traffic stop as the vehicle approached a red light. *2T. at 279-280.*

{¶5}    Bond did not immediately comply and instead continued driving until he was forced to pull into a gas station due to a road closure. *2T. at 285*. Bond parked next to a gas pump, and Officer Cikity requested backup. Multiple officers responded. *2T. at 284*. The encounter was recorded on Officer Cikity's body-worn camera. *State's Exhibit 47.*

---

[1] *See State v. Bond*, 2025-Ohio-360 (5th Dist.).

[2] For clarity, the transcript of Reed's jury trial will be referred to as "__T.__" signifying the volume and page number.

{¶6} Officer Cikity testified that he believed there could be up to four individuals in the truck. *2T. at 287*. He ordered the occupants to roll down the windows and place their hands outside the vehicle; none complied. *2T. at 292-293, 348-349*. Officer Cikity recognized Bond from prior encounters and testified that Bond had previously summoned family members to traffic stops. *2T. at 295-296, 298*.

{¶7} Approximately seven minutes and forty seconds into the stop, Bond exited the vehicle at the officers' direction. *2T. at 300-301*. Reed, the front-seat passenger, exited next. *2T. at 302*. Officers recovered from Reed a Visa card bearing his name, a Cash App card, and $585 in U.S. currency. *4T. at 479-480, 494; State's Exhibits 21, 22, 32*. The rear-seat passenger, Khiren Willis, then exited the truck. *2T. at 302-303.* Each individual was holding a cellular phone. *2T. at 303*. Shortly thereafter, Bond's relatives arrived at the scene. *State's Exhibit 47.*

**Search of the Vehicle**

{¶8} Officer Cikity approached the truck to ensure no additional occupants were present. *2T. at 304*. A canine unit, handled by Officer Reitschlin, conducted a sniff of the vehicle. The dog, "Mika," alerted to the presence of narcotics. *2T. at 303-304, 391*.

{¶9} A subsequent search revealed large quantities of methamphetamine, fentanyl, and crack cocaine concealed behind the dashboard, as well as burnt marijuana in plain view. *2T. at 306-307, 393-396; State's Exhibits 33, 48.* Officers also recovered six cellular phones from inside the truck. *2T. at 374; State's Exhibits 6, 8, 10, 12, 14, 16.*

**Cell Phone Evidence**

{¶10} On April 25, 2023, Reed went to the Mansfield Police Department forensic science center seeking the return of his two cell phones. *4T. at 501*. Evidence technician

Cindy Reed testified that she initially presented two phones, which Reed stated were not his. *4T. at 502.* She then showed Reed all six phones recovered during the traffic stop, and Reed identified two as belonging to him and signed a voucher for their return. *4T. at 502-507; State's Exhibits 14, 16, 41.*

{¶11} Jerry Botdorf, a forensic investigator with the City of Mansfield crime lab, testified that he extracted data from both phones. *4T. at 514-515, 523.* One phone - a green Apple iPhone 13 Pro Max - yielded approximately 95 percent of its data. *4T. at 538-540; State's Exhibit 36.* The second phone - a gray Apple iPhone 11 - yielded a similar extraction. *4T. at 540-541; State's Exhibits 13, 15, 35.*

{¶12} Detective Perry Wheeler of the METRICH Enforcement Unit testified that the quantities of drugs recovered were far in excess of amounts consistent with personal use and were indicative of trafficking. *4T. at 563-565.* He estimated the street value of the drugs at approximately $3,000. *4T. at 614.* Detective Wheeler further testified that METRICH had conducted controlled buys from Reed and that Reed had been under investigation for some time. *4T. at 570-571[3].*

{¶13} Based on his review of data extracted from Reed's iPhone 13 Pro Max, Detective Wheeler prepared a report summarizing thousands of messages spanning March 24, 2022, through April 18, 2023, totaling more than 480 printed pages. *4T. at 574, 578-613; State's Exhibits 59-71.* Many messages involved individuals seeking to purchase drugs from Reed, to arrange meeting locations with Reed, and to discuss payment methods with Reed. *4T. at 578-614.*

**Gang-Related Evidence**

---

[3] The Detective specified the date for confirmed drug buys from Reed as "2017". *4T. at 586.* The Detective testified that they have had no recent drug transactions with Reed. *Id.*

{¶14}   Lieutenant Ryan Grimshaw and Sergeant Travis Stantz, both members of the Mansfield Police Department's Community Action Team, testified as expert witnesses in gang activity. *5T. at 720, 753; 6T. at 868, 886.* Each described the history and operations of a gang known as Bandsfield ("Bandsfield") and Reed's involvement therein. *5T. at 722-725, 753; 6T. at 869, 872-873, 876-877, 885-971.*

{¶15}   Sergeant Stantz also analyzed data extracted from Reed's second cell phone, which included references to the Cash App card found on Reed's person during the traffic stop. *4T. at 478, 6T. at 978, 981; State's Exhibit 22.* Based on this analysis, Sergeant Stantz concluded the phone was used as a tool for drug trafficking. *6T. at 975-983.*

**Verdict and Sentencing**

{¶16}   The defense rested without presenting witnesses. The jury returned guilty verdicts on all five counts of the indictment.

{¶17}   At sentencing on February 19, 2025, the trial court merged Counts 1 and 2, and Counts 3 and 4. On Count 2, trafficking in cocaine, a felony of the first degree, the court imposed a mandatory prison term of ten to a potential maximum sentence of fifteen years. On Count 4, trafficking in a fentanyl-related compound, also a felony of the first degree, the court imposed a mandatory ten-year term. On Count 5, participating in a criminal gang, a felony of the second degree, Reed was sentenced to eight years in prison.

{¶18}   The trial court ordered Counts 2, 4, and 5 to be served consecutively, resulting in an aggregate minimum prison sentence of twenty-eight years and a potential maximum prison sentence of thirty-three years.

**Assignments of Error**

{¶19} Reed raises five assignments of error for our consideration,

{¶20} "I. THE TRIAL COURT ERRED BY ENTERING A CONVICTION OF PARTICIPATING IN A CRIMINAL GANG BASED ON INSUFFICIENT EVIDENCE, IN DEROGATION OF DEFENDANT'S RIGHTS TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

{¶21} "II. THE TRIAL COURT ERRED IN REFUSING TO GIVE AN INSTRUCTION TO THE JURY THAT DEFENDANT'S PARTICIPATION IN THE CRIMINAL GANG MUST BE MORE THAN PASSIVE OR NOMINAL."

{¶22} "III. THE TRIAL COURT COMMITTED PLAIN ERROR IN THE ADMISSION OF EVIDENCE PERTAINING TO CRIMINAL ACTS COMMITTED BY DEFENDANT WHICH WERE UNRELATED TO THE CHARGE OF PARTICIPATING IN A CRIMINAL GANG, IN DEROGATION OF DEFENDANT'S RIGHTS TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

{¶23} "IV. DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO THE ADMISSION OF EVIDENCE PERTAINING TO CRIMINAL ACTS COMMITTED BY DEFENDANT WHICH WERE UNRELATED TO THE CHARGE OF PARTICIPATING IN A CRIMINAL GANG, IN DEROGATION OF DEFENDANT'S RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶24} "V. THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES WHICH WERE CLEARLY AND CONVINCINGLY UNSUPPORTED BY THE RECORD."

I.

{¶25} In his first assignment of error, Reed argues that the evidence was insufficient to support his conviction for Participating in a Criminal Gang. Specifically, he contends the State failed to prove that he actively participated in the gang or that he purposely promoted, furthered, or assisted the gang's criminal conduct. We disagree.

**Standard of Review — Sufficiency of the Evidence**

{¶26} Sufficiency of the evidence presents a question of law that we review de novo. *State v. Walker*, 2016-Ohio-8295, ¶ 30. The relevant inquiry is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259 (1991), paragraph two of the syllabus.

{¶27} A conviction will be reversed for insufficient evidence only where reasonable minds could reach but one conclusion - acquittal. *State v. Ketterer*, 2006-Ohio-5283, ¶ 94.

**Governing Law**

{¶28} Reed was convicted under R.C. 2923.42(A), which prohibits a person who actively participates in a criminal gang, with knowledge of the gang's pattern of criminal activity, from purposely promoting, furthering, assisting, or engaging in criminal conduct as defined by R.C. 2923.41(C).

{¶29} A "criminal gang" is defined as an ongoing organization of three or more persons that has as one of its primary activities the commission of certain enumerated offenses, possesses a common name or identifying signs or symbols, and engages in a pattern of criminal gang activity. R.C. 2923.41(A)-(B).

{¶30} Importantly, Reed does not dispute that Bandsfield, or its affiliated hybrid groups, constitutes a criminal gang within the meaning of the statute, nor does he dispute that he was a member of that gang. (*Appellant's brief at 8.*) His challenge is limited to whether the State proved active participation and purposeful involvement in criminal conduct.

**Criminal Gang — R.C. 2923.41(A)**

{¶31} The State presented extensive evidence at trial establishing that Bandsfield and its associated hybrid groups constitute a criminal gang. Sergeant Travis Stantz, recognized by the trial court as an expert in gang activity in Mansfield and Richland County, testified that Bandsfield has existed since at least 2014, claims defined territory in Mansfield's north end, and operates under various names and symbols, including "Five Block," "The Fifth," and "500." *6T. at 887-891.*

{¶32} Sergeant Stantz further testified that law enforcement had identified approximately fourteen known members of Bandsfield, all with felony convictions - including Reed - and that the gang's primary activity involved the distribution of illegal drugs. *6T. at 888-889; 935.*

{¶33} This testimony was sufficient to establish the existence of a criminal gang under R.C. 2923.41(A).

**Active Participation**

{¶34}  The central dispute concerns whether Reed actively participated in the gang. Active participation requires involvement that is more than nominal or passive. *State v. Stallings*, 2002-Ohio-5942, ¶ 16 (9th Dist.); *State v. Coe*, 2010-Ohio-1840, ¶ 55 (5th Dist.).

{¶35}  Here, the State presented overwhelming evidence of Reed's active participation. Sergeant Stantz testified to multiple videos and photographs depicting Reed alongside known Bandsfield members, including Bond and Willis - who were present during the traffic stop, displaying gang signs, handling firearms, drugs, and large amounts of cash, and engaging in conduct consistent with gang-related criminal activity. *6T. at 907-925; State's Exhibits 112, 114*[4].

{¶36}  In *State v. Stallings*, the Ninth District Court of Appeals held that "[a]s applied to R.C. 2923.42(A), the common and ordinary meaning of 'actively participates in a criminal gang' is involvement with a criminal gang that is more than nominal or passive." In *Stallings*, the Ninth District further found that "for a defendant to be criminally liable under R.C. 2923.42(A), he would also have to be criminally liable as an aider or abettor to a crime committed by a fellow gang member or members." *Stallings,* 2002-Ohio-5942 at ¶ 16, *see also State v. Stewart*, 2009 Ohio 3411 (3rd Dist.); *State v. Coe*, 2010-Ohio-1840, ¶ 55 (5th Dist.).

{¶37}  Sergeant Stantz testified to videos and screen shots of Bandsfield members from 2018 that included Reed, Bond, and Willis who were in the truck at the time of the

---

[4] Sergeant Stantz testified to videos and screen shots of the Bandsfield gang members from 2018 that included Reed, Bond, and Willis who were in the truck at the time of the traffic stop in this case. *6T. at 907; 912 State's Exhibit 112*

traffic stop in this case. *6T. at 907; 912 State's Exhibit 112.* Sergeant Stantz testified that the videos included a scene posted March 26, 2017, with three Bandsfield members sitting around a table on which was a firearm, several cell phones, and baking soda - often added to cocaine to produce crack cocaine. *6T. at 919-920; State's Exhibit 14.* Sergeant Stantz testified that a screenshot from a video showed one of the members holding a large amount of cash and also pointing at a firearm, others showed members presenting common gang signs, as well as one of the other traffic stop participants depicting signs meant to show disrespect to rival gangs. *6T. at 924-925; State's Exhibit 114.* Khiren Willis, who was the back seat passenger in the traffic stop, was the victim of a homicide before Reed's trial; the other, Jabril Bond, the driver, was incarcerated at the time of trial. *6T. at 928, 930-931.*

{¶38} Sergeant Stantz identified five independent criteria supporting Reed's active participation:

1. Reed's repeated association with gang members during criminal activity;

2. Reed's possession of gang-specific tattoos;

3. Reed's residence within established gang territory;

4. Reed's consistent use of gang symbols, hand signs, and dress;

5. Reed's presence in documented gang photographs and videos.

*6T. at 935-936.*

{¶39} Sergeant Stantz provided information from several law enforcement investigations involving other Bandsfield members where Reed was either (a) present at the crime scenes or (b) himself under investigation by law enforcement for committing

various crimes where other Bandsfield members were present[5] or (c) himself a victim of a crime and was present with other Bandsfield members at the time of the crime[6]. *6T. at 939-942*. Images of Reed's tattoos were identified by Sergeant Stantz, who identified Fifth Ward, the Five Block umbrella, a money sign, the State of Ohio and "A-V-E" emblems tattooed on Reed, all of which Sergeant Stantz testified are Bandsfield affiliated tattoos. *6T. at 942-944*. Sergeant Stantz also identified Images of other known Bandsfield gang members which depicted similar Bandsfield related tattoos, including those of Jabril Bond - the driver of the truck in which Reed was a passenger at the traffic stop. *6T. at 943-952*. Sergeant Stantz then identified various images showing Reed, along with other known members, displaying gang symbols associated with Bandsfield. *6T. at 952-957.*

{¶40} In a video shown at trial Sergeant Stantz identified Reed and several other members of Bandsfield, including Jabril Bond, handling firearms, large quantities of money, and drugs, and displaying gang signs while seemingly engaged in some form of gambling in which the prize consisted of a cell phone and three credit cards. *6T. at 967-971.* Sergeant Stantz also described a funeral memorial service for a rival gang member that he was monitoring for security purposes. While on that detail he personally observed Khiren Willis, Jabril Bond, and Reed, as well as other Bandsfield members, outside the funeral venue in 2023 shooting a video, which was played without sound during Sergeant Stantz's testimony. *6T. at 954-971.*

{¶41} Sergeant Stantz testified that Reed had numerous gang-related tattoos, was photographed either displaying gang signs or alongside other individuals displaying gang signs and had prior convictions. *See State v. Hairston*, 2008 Ohio 891, ¶ 16-17 (9th

---

[5] Selling drugs with other known gang members in 2017.
[6] Sergeant Stantz testified that in 2022 Reed was shot while at a bar. *6T. at 939-940.*

Dist.) (concluding that the State presented sufficient evidence of active participation in a gang where the defendant had graffiti markings of the gang in his home and was previously arrested at the same time of a known gang member). *See also State v. McCraney*, 2010 Ohio 6128, ¶ 27-30 (9th Dist.) (agreeing that the State set forth sufficient evidence of active participation, in part, because the appellant had a Myspace webpage that depicted numerous gang-related photographs); *State v. Coe*, 2010-Ohio-1840, ¶¶ 57-59 (5th Dist.) (State presented sufficient evidence of active participation, in part, due to tattoos, and Myspace webpage that depicted numerous gang-related photographs).

{¶42} The evidence presented during Reed's jury trial mirrors – in fact exceeds – evidence found sufficient in prior cases upholding convictions under R.C. 2923.42. See *State v. Hairston*, 2008-Ohio-891, ¶¶ 16–17 (9th Dist.); *State v. McCraney*, 2010-Ohio-6128, ¶¶ 27-30 (9th Dist.); *State v. Coe*, 2010-Ohio-1840, ¶¶ 57–59 (5th Dist.).

**Knowledge of the Gang's Pattern of Criminal Activity**

{¶43} Under R.C. 2923.41(B)(1), a "pattern of criminal gang activity" means that "persons in the criminal gang have committed, attempted to commit, conspired to commit, been complicitors in the commission of, or solicited, coerced, or intimidated another to commit, attempt to commit, conspire to commit, or be in complicity in the commission of two or more" specified offenses. These specified offenses include, inter alia, felonies or acts committed by a juvenile that would be felonies if committed by an adult. R.C. 2923.41(B)(1)(a). The "pattern of criminal gang activity" is established when at least one of the two or more specified offenses is a felony, at least one of the two or more specified offenses occurs on or after January 1, 1999, the most recent of the specified offenses

occurs within five years of another of the specified offenses, and the specified offenses are committed on separate occasions by two or more persons. R.C. 2923.41(B)(2).

{¶44} The State also established Reed's knowledge of Bandsfield's pattern of criminal gang activity. Sergeant Stantz testified that Bandsfield is a criminal gang in the city of Mansfield and that up until April 18th of 2023,[7] Reed was an active member of this gang, whose primary activities involve the selling of drugs. *6T. at 984-985*. Sergeant Stantz specifically identified fourteen members of Bandsfield known to law enforcement, including all three of those involved in the traffic stop. In total those fourteen known Bandsfield members, at the time of trial, had a combined 106 known felony convictions, eighty-seven of which were drug-related, representing eighty-two percent of their convictions. *6T. at 935.*

{¶45} Given Reed's long-standing association with these members, his own felony drug convictions, and his admitted gang membership, a rational juror could readily conclude that Reed knew Bandsfield engaged in a pattern of criminal gang activity as defined by R.C. 2923.41(B).

**Purposeful Promotion or Engagement in Criminal Conduct**

{¶46} Finally, the State presented sufficient evidence that Reed purposely promoted, furthered, assisted, or engaged in criminal conduct. Reed's prior felony drug convictions dating back to 2014 were admitted at trial. *6T. at 898-902*. The jury also heard extensive testimony regarding Reed's role in drug trafficking activity contemporaneous with the charged offenses.

---

[7] The date of the traffic stop in this case.

**{¶47}** Reed does not dispute his drug convictions or his gang affiliation. Taken together, this evidence supports the conclusion that Reed's criminal conduct was not isolated, but rather consistent with—and in furtherance of—the gang's primary criminal objectives.

**Conclusion**

**{¶48}** Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Reed actively participated in a criminal gang, knew of its pattern of criminal activity, and purposely engaged in or furthered criminal conduct as prohibited by R.C. 2923.42(A).

**{¶49}** Accordingly, the evidence was sufficient to support Reed's conviction for Participating in a Criminal Gang, and his first assignment of error is overruled.

II.

**{¶50}** In his second assignment of error, Reed argues that the trial court improperly instructed the jury on the offense of Participating in a Criminal Gang. Specifically, he contends the court erred by refusing his proposed instruction that "actively participates" requires involvement that is more than nominal or passive. We disagree.

**Standard of Review**

**{¶51}** A trial court must fully and correctly instruct the jury on the law applicable to the case. *State v. Comen*, 50 Ohio St.3d 206, 208 (1990), paragraph two of the syllabus. When a defendant objects to a jury instruction at trial, the claimed error is reviewed for harmless error under Ohio Crim. R. 52(A). *State v. Underwood*, 3 Ohio St.3d 12 (1983); *State v. Lang*, 2011-Ohio-4215, ¶ 145.

{¶52}   Here, Reed submitted proposed written instructions and objected to the instructions as given. Accordingly, reversal is warranted only if the alleged instructional error affected his substantial rights.

**Jury Instructions Given**

{¶53}   The trial court instructed the jury, in relevant part:

> Before you can find Mr. Reed guilty of participating in a criminal gang, you must find beyond a reasonable doubt that he actively participated in a criminal gang with knowledge that the gang engages in or has engaged in a pattern of criminal gang activity, and that he purposely promoted, furthered, or assisted criminal conduct, or purposely committed or engaged in criminal conduct.  (7T. at 1151,1154).

{¶54}   The court further instructed that the offense required a specific intent to promote, further, or assist criminal conduct. *Id.*

**Governing Law**

{¶55}   Erroneous jury instructions ordinarily do not constitute structural error and are subject to harmless-error analysis. *Neder v. United States*, 527 U.S. 1 (1999); *Chapman v. California*, 386 U.S. 18 (1967).

{¶56}   Under Crim.R. 52(A), the State bears the burden of demonstrating that any preserved error did not affect the outcome of the trial. *State v. Jones*, 2020-Ohio-3051, ¶¶ 17-18. An error is harmless when it is clear beyond a reasonable doubt that it did not contribute to the verdict. *State v. Rahman*, 23 Ohio St.3d 146, 151 (1986).

**Analysis**

{¶57} Reed's argument rests on the premise that the jury could not properly determine whether he "actively participated" in a criminal gang without an express instruction that such participation must be more than nominal or passive. Ohio law does not support that premise.

{¶58} In *State v. Stallings*, the Ninth District held that the phrase "actively participates in a criminal gang" carries a common and ordinary meaning that requires involvement "more than nominal or passive." *Stallings*, 2002-Ohio-5942, ¶ 16. The court in *Stallings* found that because jurors readily understand that meaning, the statute is not unconstitutionally vague. *Id.*; see also *State v. Coe*, 2010-Ohio-1840, ¶ 55 (5th Dist.).

{¶59} Consistent with this authority, the trial court was not required to further define "actively participates" using Reed's proposed language. The jury was properly instructed on each statutory element, including active participation, knowledge, and purposeful promotion or assistance of criminal conduct.

{¶60} Even assuming the court could have provided additional clarification, any omission was harmless. As discussed in our resolution of Reed's first assignment of error, the evidence of his active involvement in the gang and its criminal activities was overwhelming. There is no reasonable probability that the verdict would have been different had the requested instruction been given.

**Conclusion**

{¶61} The jury instructions, taken as a whole, accurately stated the law and adequately guided the jury's deliberations. Any alleged error was harmless beyond a reasonable doubt and did not affect Reed's substantial rights.

{¶62} Reed's second assignment of error is overruled.

III.

{¶63} In his third assignment of error, Reed argues that the trial court improperly admitted evidence of other acts and prior convictions unrelated to the charge of Participating in a Criminal Gang. We disagree.

{¶64} Reed concedes he did not object to the evidence at trial; accordingly, we review this claim solely for plain error.

**Plain-Error Review**

{¶65} Crim.R. 52 distinguishes preserved from unpreserved error. To establish plain error, a defendant must demonstrate (1) an error occurred, (2) the error was obvious, and (3) there is a reasonable probability that the outcome of the trial would have been different but for the error. *State v. Rogers*, 2015-Ohio-2459, ¶ 22; *State v. McAlpin*, 2022-Ohio-1567, ¶ 66. These requirements are conjunctive, and all must be satisfied. *State v. Bailey*, 2022-Ohio-4407, ¶ 9. Even then, an appellate court will intervene only in exceptional circumstances to prevent a manifest miscarriage of justice. *Rogers* at ¶ 23; *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus; see also *State v. Higginbotham*, 2026-Ohio-84, ¶ 56 (5th Dist.).

{¶66} Reed challenges the admission of evidence concerning his prior conduct and convictions and the criminal convictions and conduct of other individuals associated with Bandsfield.

**Analysis**

{¶67} To secure a conviction under R.C. 2923.42, the State was required to prove that Reed actively participated in a criminal gang and knew the gang engaged in a pattern

of criminal gang activity. R.C. 2923.41(B) defines a "pattern of criminal gang activity" as the commission of two or more qualifying offenses by gang members on separate occasions or by multiple persons.

{¶68} Because proof of a pattern of criminal gang activity is an essential element of the offense, evidence of Reed's prior felony convictions was admissible. When a prior conviction constitutes an element of the charged offense, it is a factual matter for the jury to determine. *State v. Gordon*, 28 Ohio St.2d 45, 48-50 (1971).

{¶69} Likewise, Evid.R. 404(B) does not bar evidence of crimes or acts committed by third parties. Such evidence does not implicate a defendant's character or propensity and is, therefore, outside the rule's scope. *State v. Lathon*, 2024-Ohio-5886, ¶ 94 (10th Dist.). Here, the State introduced evidence of crimes committed by other Bandsfield members to establish that Bandsfield qualified as a criminal gang and that its members engaged in a pattern of criminal gang activity as defined in R.C. 2923.41(A) and (B). Ohio courts have repeatedly recognized the relevance of such evidence for that purpose. *State v. Bias*, 2022-Ohio-4643, ¶ 138 (10th Dist.); *State v. Taylor*, 2012-Ohio-1263, ¶ 31 (9th Dist.).

{¶70} Importantly, the trial court issued limiting instructions—agreed to by both parties—directing the jury that evidence of prior convictions could be considered only with respect to Count Five, Participating in a Criminal Gang, and not Counts One through Four. *7T. at 1120-1124, 1128-1131*. The jury was further instructed that the evidence was admitted solely to define a criminal gang and a pattern of criminal gang activity. These instructions mitigated any risk of unfair prejudice.

{¶71} To establish plain error, Reed must show not only that an error occurred and was obvious, but also that it affected the outcome of the trial. *McAlpin*, 2022-Ohio-1567, ¶ 66; *Bailey*, 2022-Ohio-4407, ¶ 8. Reed has failed to make that showing. The challenged evidence was admissible, relevant to essential elements of the offense, and properly limited by the trial court's instructions.

{¶72} Accordingly, Reed has not demonstrated plain error.

{¶73} Reed's third assignment of error is overruled.

IV.

{¶74} In his fourth assignment of error, Reed argues that trial counsel rendered ineffective assistance by failing to object to the admission of uncharged conduct and prior convictions—the same evidence challenged in his third assignment of error.

{¶75} Counsel's failure to object, standing alone, does not constitute ineffective assistance absent a showing of prejudice. *State v. Fears*, 86 Ohio St.3d 329, 347 (1999). To prevail on such a claim, a defendant must satisfy both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984), by demonstrating deficient performance and resulting prejudice.

{¶76} As explained in our resolution of Reed's third assignment of error, the trial court did not err in admitting the challenged evidence. Because the evidence was properly admitted, any objection would have been meritless. Counsel cannot be deemed ineffective for failing to raise a futile objection. *See State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 231; *State v. Washington* 2024-Ohio-1056, 36 (8th Dist.); *State v. Andrews*, 2023-Ohio-4237, ¶ 55 (6th Dist.).

{¶77}  Accordingly, Reed has failed to demonstrate either deficient performance or prejudice under *Strickland*. Trial counsel's representation did not fall below an objective standard of reasonable professional conduct, nor did it affect the outcome of the proceedings.

{¶78}  Reed's fourth assignment of error is overruled.

**V.**

{¶79}  In his fifth assignment of error, Reed argues that the trial court's imposition of consecutive sentences is not supported by the record.

**Standard of Review**

{¶80}  When reviewing felony sentences, an appellate court examines the entire record, including the sentencing hearing, the judgment entry, and any presentence investigation. R.C. 2953.08(F); *State v. Jones*, 2020-Ohio-6729, ¶ 36. A sentence may be modified or vacated only if the reviewing court clearly and convincingly finds either that the record does not support the trial court's statutory findings or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2); *State v. Bonnell*, 2014-Ohio-3177, ¶ 28.

{¶81}  A sentence is contrary to law when it violates an applicable statute. *Jones* at ¶ 34. An appellate court may not substitute its judgment for that of the trial court or reweigh the seriousness and recidivism factors under R.C. 2929.11 and 2929.12. *Id.* at ¶ 39.

**Consecutive Sentences.**

{¶82}  Ohio law presumes that multiple prison terms will be served concurrently. R.C. 2929.41(A). That presumption may be overcome only if the trial court makes the findings required by R.C. 2929.14(C)(4). Specifically, the court must find that consecutive

sentences are necessary to protect the public or to punish the offender, that they are not disproportionate to the seriousness of the conduct and the danger posed, and that one of the additional statutory factors applies.

{¶83} The trial court is required to make these findings at the sentencing hearing and incorporate them into the sentencing entry. *Bonnell* at ¶ 26. While a verbatim recitation of the statute is unnecessary, the record must reflect that the court engaged in the proper analysis and that evidence supports the findings made. *Id.* at ¶¶ 29, 37.

{¶84} Here, the trial court expressly found that consecutive sentences were necessary to protect the public and punish Reed, and that such sentences were not disproportionate to the seriousness of Reed's conduct. *Sent. T. at 1236; Judgment Entry, Sept. 20, 2025, at 3.* The court further found that Reed committed multiple offenses as part of a course of conduct and that the resulting harm was so great or unusual that no single prison term adequately reflected the seriousness of his conduct. R.C. 2929.14(C)(4)(b). The court also found that Reed's criminal history demonstrated the need for consecutive sentences to protect the public. R.C. 2929.14(C)(4)(c).

{¶85} A trial court need only make one of the findings set forth in R.C. 2929.14(C)(4)(a)-(c) to support consecutive sentences. *State v. Bates*, 2024-Ohio-2587, ¶ 42. The trial court here made more than one.

**Record Support**

{¶86} The record supports the trial court's findings. Reed was convicted by a jury of four first-degree felonies and one second-degree felony. At sentencing, the court reviewed Reed's prior felony cases from 2014, 2015, and 2017 and expressly found that

he had not responded favorably to prior sanctions and continued to engage in serious drug trafficking activity. *Sent. T. at 1219, 1233-1234.*

{¶87} Before imposing sentence, the trial court heard from defense counsel, Reed, and the State, and expressly considered the purposes and principles of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. *Sent. T. at 1218-1230.* Contrary to Reed's assertion, the court did not improperly rely on a lack of remorse; rather, it emphasized Reed's repeated failure to change his conduct despite prior incarceration. *Sent. T. at 1233-1234.*

{¶88} The imposed sentences were within the statutory ranges, and nothing in the record suggests the trial court relied on impermissible considerations. The record contains ample evidence supporting the findings required by R.C. 2929.14(C)(4).

{¶89} Accordingly, Reed has not demonstrated that his consecutive sentences are unsupported by the record or contrary to law.

{¶90} Reed's fifth assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Richland County Court of Common Pleas is affirmed.  Costs to Appellant, Anthony Reed.

By: Popham, J.

King, P.J. and

Hoffman, J., concur